4000 ASHER, INC. *v.* STATE of Arkansas

CR 86-68                                716 S.W.2d 190

Supreme Court of Arkansas
Opinion delivered September 22, 1986

*R. W. Laster* and *Arthur M. Schwartz*, for appellants.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. In May, 1984, two members of the Little Rock police department's vice squad entered a newly opened "adult" bookstore and bought a magazine, a paperback book, and a video cassette. When the officers examined their purchases, they considered them to be obscene. The officers then went to the prosecuting attorney's office, where a deputy prosecutor issued a felony information charging the corporate owner of the bookstore and its manager with having possessed and promoted obscene materials. The officers obtained a warrant for the arrest of the manager, Clark.

A jury trial resulted in a hung jury. The case was then submitted by agreement to the circuit judge. He found both defendants guilty and fined the corporation $10,000 and Clark $1,000. Both have appealed, the case coming to this court under Rule 29(1)(a) and (c). They do not question the fact that the materials are obscene. Instead, Clark raises a procedural point, and both appellants attack the validity of the applicable statute on three constitutional grounds. We cannot sustain any of their arguments.

First, Clark insists that he should not have been arrested without a prior judicial determination of obscenity. This contention is fallacious. The cases that are cited dealt with police action by which obscene matter was summarily seized without judicial authorization. In the case at hand there was neither a search nor a seizure. The articles were offered for public sale by the bookstore. The officers walked in and bought them. There was no violation of the prohibition against unreasonable searches and seizures, for the obscene matter was lawfully obtained by the police. *Maryland* v. *Macon*, 105 S.Ct. 2778 (1985). Here the usual Arkansas criminal procedure was followed: The officers completed their investigation and then went to the prosecuting attorney and submitted the charges.

In their second argument the appellants attack our obscenity statute as being so discriminatory as to deny the equal protection of the laws. Act 28 of 1981 (1st Ex. Sess.); Ark. Stat. Ann. §§ 41-

3584 et seq. (Supp. 1985).

The statute broadly prohibits any person from promoting obscene materials. § 41-3585.2. To "promote" includes to sell or offer to sell. § 41-3585.1(6). The present attack centers on an exemption for employees of motion picture theaters, as follows:

(1) No employee is liable to prosecution under this Act for promoting or possession with intent to promote any obscene motion picture provided the employee is acting within the scope of his regular employment.

(2) As used in Subsection (1) of this Section, "employee" means any person regularly employed by the owner or operator of a motion picture theatre if he has no financial interest other than salary or wages in the ownership or operation of the motion picture theatre, no financial interest in or control over the selection of the motion pictures shown in the theatre, and is working within the motion picture theatre in which he is regularly employed, but does not include a manager of the motion picture theatre. [§ 41-3585.7.]

It will be seen that under the statute if a motion picture theater exhibits obscene films, an employee such as an usher or ticket seller is not liable to prosecution unless he has the specified financial interest in or control of the theater or the selection of its films. The appellants argues that since a clerk in a bookstore would not have the same freedom from prosecution, the statute makes an unreasonable distinction and hence denies equal protection.

The appellants insist that their position is supported by a Maryland case, and indeed it is. *Wheeler* v. *State*, 380 A.2d 1052 (1977). There the Maryland statute had an exemption for any employee who was not an officer of the theater and had no financial interest in it. There was no similar exemption for bookstore employees. In finding the obscenity statute to be invalid the court said, at page 1059:

Thus, an usher in the exempted class who distributes to the theatre patrons a program concerning the film being shown, which program itself constitutes obscene matter, would not be subject to the prohibitions of § 418. The

bookstore employee, however, or any other person not within the exempted class, who distributed that same program, would be subject to punishment for violation of the statute. Thus, the law operates on some persons and not upon others like situated or circumstanced.

■■ We cannot agree with the Maryland court's comparatively narrow view of legislative authority in the matter of classification. Here the appellants were selling obscene materials. Such materials are not speech within the protection of the First Amendment. *Paris Adult Theatre* v. *Slaton*, 413 U.S. 49 (1973). For that reason the courts do not subject the statute to that close scrutiny which is required when a law may infringe on free speech. Instead, the statute must be upheld if, as in any other equal protection case, there is a rational basis for the classification.

We are persuaded by the reasoning of the Supreme Court of Washington when it upheld a statute that granted an exemption to motion picture operators or projectionists but not to employees of bookstores. *State* v. *J-R Distributors*, 82 Wash.2d 584, 512 P.2d 1049 (1973). We quote the court's analysis:

There are valid reasons for the classification. The following are by no means exclusive: (1) Book and magazine stores offer a wide range of materials from which both the customer and clerk may select at the time of sale. Each has an opportunity to choose that which will be sold or purchased. On the other hand, motion pictures are shown one reel at a time and the projectionist must exhibit those selected by the manager. (2) Projectionists do not decide which films to exhibit and thus should not be obliged to make a judgment as to their obscenity. Furthermore, to require a projectionist to decide whether the showing of a particular film would be a crime might tend to "chill" the dissemination of borderline, but constitutionally protected motion pictures. [512 P.2d 1061-62.]

The same result was reached on similar facts in *State* v. *Lesieure*, 404 A.2d 457 (R.I. 1979).

■ To the Washington Court's discussion may be added another thought. The theater projectionist or ticket seller or usher

plays no part in inducing patrons to come to the theater to see an obscene picture; that is management's responsibility. But the bookstore clerk often can play a role in the sale of pornography. A clerk could readily determine that one of the items sold in the case at bar was obscene by glancing at any page to which the book might be opened at random. The exhibit in question contains nothing except an obscene photograph on every page. Hence the clerk could actively promote the sale of a book or magazine by recommending it to his steady customers. The theater employee has no similar opportunity. Without further discussion we conclude that the statutory exemption in favor of theater employees is valid.

The appellants also complain of a second exemption in the same section of the statute:

(3) No employee, board of directors or trustee of a bona fide school, museum or public library, acting within the scope of his regular employment, is liable to prosecution for violation of this Act for disseminating writings, films, slides, drawings, or other visual reproductions which are claimed to be obscene. [§ 41-3585.7.]

■ It is again argued that the statute denies equal protection because bookstore employees do not enjoy the same immunity from prosecution that is granted to the employees of schools, museums, and libraries. We think the classification to be reasonable on its face, and there is no proof indicating otherwise. A similar exemption for employees of schools and museums was upheld in *Commonwealth* v. *Ferro*, 361 N.E.2d 1234 (Mass. 1977). There the court justified the distinction on the ground that the legislature might properly have a policy of protecting educational resources from use in obscenity litigation rather than in social service. An even stronger basis for upholding the Arkansas statute is that it restricts the exemption to an employee, director, or trustee "acting within the scope of his regular employment." The legislature could reasonably believe that there is no real possibility that employees of such educational and governmental facilities will be called upon to disseminate obscene material in the course of their regular employment. Presumably the exemption was inserted as a precaution against the possibility that someone might check a book out of a public library and contend

that the librarian was disseminating obscene matter.

■ With regard to this exemption the appellants also argue that the statute is overbroad in that the reference to "bona fide" schools, museums, and libraries is too vague, because the exact meaning of bona fide is not given in the statute. This argument is hardly worth discussion, for the settled meaning of bona fide as synonymous with its literal translation, "good faith," is so familiar that the average person could not be misled. The use of "bona fide" has been approved, in the face of a similar contention, in a number of cases. *U. T. Inc.* v. *Brown*, 457 F. Supp. 163 (D.C. N.C. 1978); *Baseline Liquors* v. *Circle K. Corp.*, 129 Ariz. 215, 630 P.2d 38 (Ariz. App. 1981); *People* v. *Latsis*, 578 P.2d 1055 (Colo. 1978).

■ The appellants' fourth argument is that we have at least one other statute under which the same conduct by them would have been a misdemeanor. Ark. Stat. Ann. § 41-3553 (Repl. 1977). It is insisted that there is a denial of equal protection when a state has two statutes which are applicable to the same offense but carry different punishments. The Supreme Court rejected that constitutional argument in *United States* v. *Batchelder*, 442 U.S. 114 (1979). We followed the *Batchelder* case in *Miller* v. *State*, 273 Ark. 508, 621 S.W.2d 482 (1981), and have consistently adhered to that position. *Zones* v. *State*, 287 Ark. 483, 702 S.W.2d 1 (1985). No reason is suggested for a reconsideration of our settled rule.

Affirmed.