902 F.2d 513
 60 Ed. Law Rep. 404
 William H. KUCHAREK; Shangri-La Enterprises, Inc., doing
business as Denmark Bookstore; and Paradise One,
Inc., doing business as Paradise Video
Store, Plaintiffs-Appellees,
v.
Donald HANAWAY, Attorney General of Wisconsin, Defendant-Appellant.
 No. 89-2885.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 21, 1990.
Decided May 7, 1990.
Rehearing and Rehearing En Banc Denied July 12, 1990.
 
 Stephen M. Glynn, James A. Walrath, Shellow, Shellow & Glynn, Milwaukee, Wis., for plaintiffs-appellees.
 Thomas Balistreri, Asst. Atty. Gen., Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendant-appellant.
 James P. Mueller, Phoenix, Ariz., for amicus curiae.
 Before POSNER and EASTERBROOK, Circuit Judges, and MOODY, District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 The Attorney General of Wisconsin appeals from an order declaring--at the behest of several purveyors of sexually explicit books, magazines, and videotapes--Wisconsin's obscenity statute unconstitutional, and enjoining its enforcement. 714 F.Supp. 1499 (E.D.Wis.1989). The statute, Wis.Stat. Sec. 944.21, was enacted in 1988, after eight years in which Wisconsin had no obscenity statute, the predecessor to section 944.21 having been held to violate the First Amendment in State v. Princess Cinema, Inc., 96 Wis.2d 646, 292 N.W.2d 807 (1980). Passage of a successor statute was stubbornly resisted by booksellers and publishers but eventually the differences between proponents and opponents were compromised by the enactment of a statute considerably less severe than authorized by Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). As the plaintiffs concede, Wisconsin could cure the infirmities that the district judge found in the statute by replacing it with one that went to the limits permitted by Miller, and such a statute would fence the plaintiffs in more tightly than the present one does. But the plaintiffs hope that if the Wisconsin legislature were faced with a choice between a stricter statute and no statute, it would choose no statute, in which event the plaintiffs would be under no state-law constraints at all and would therefore be even better off than they are under the present statute. This explains the paradox of pornographers' arguing that an anti-pornography statute is unconstitutional because too lenient, but it does not explain why the argument persuaded the district judge.
 
 
 2
 The statute defines obscene material as "a writing, picture, sound recording or film" which appeals to the prurient interest, describes or shows sexual conduct in a patently offensive way, and lacks any redeeming social value. Anyone who sells such material "with knowledge of [its] character and content" is guilty of a crime, but there are exemptions for contract printers and also for officers and employees of public, and accredited private, schools and public libraries. The district judge concluded, in a thoughtful opinion, that the statute is unconstitutionally vague, and therefore denies due process, insofar as it fails to indicate clearly whether simulations of sexual conduct as distinct from depictions or descriptions of actual sexual conduct are comprehended within the definition of "obscene," but not insofar as it fails to specify whether videotapes are included within the definition of "material." The judge thought it plain that videotapes are included--the statute would be senseless otherwise--although the plaintiffs renew in our court their argument that the statute is hopelessly vague in this respect also. The judge further held that the statute denies the plaintiffs equal protection of the laws by arbitrarily exempting schools, libraries, and contract printers. He invalidated the statute in its entirety because he did not think that its vagueness could be cured by interpretation, but he added that the statute's severability clause would have allowed him to lop off the exemptions without invalidating the rest of the statute if they alone had been unconstitutional.
 
 
 3
 Although there have been as yet no prosecutions--of the plaintiffs or of anyone else--for violation of Wisconsin's new obscenity statute, it is early days, and the plaintiffs have made an adequate showing that they want to sell materials which the statute actually or arguably prohibits and that they are deterred from doing so by a reasonable fear of prosecution. So there is a real controversy between them and the state, and the suit can be maintained in a federal court without violating Article III of the Constitution. Bowers v. Hardwick, 478 U.S. 186, 188, 106 S.Ct. 2841, 2842, 92 L.Ed.2d 140 (1986); American Booksellers Ass'n, Inc. v. Hudnut, 771 F.2d 323, 327 (7th Cir.1985), aff'd without opinion, 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986); Alleghany Corp. v. Haase, 896 F.2d 1046, 1049 (7th Cir.1990). The existence of an actual controversy is much clearer than in Bowers. Obscenity laws are enforced, though erratically and ineffectively; sodomy laws are not enforced. The plaintiff in Bowers had been arrested for committing sodomy, but he had not been prosecuted; nor had anyone else during the preceding forty years. Yet the plaintiff was held to have standing to sue to enjoin the enforcement of the state's sodomy statute.
 
 
 4
 The plaintiffs have not attempted to show that the libraries, schools, or contract printers exempted by the statute are actual or potential competitors of theirs in the sale of pornographic materials and hence that the plaintiffs are being forced to compete with entities upon which the statute has conferred a privileged status. The lack of such a showing may appear to cast another shadow over the plaintiffs' standing to challenge the exemptions, but the appearance is deceptive. A person is allowed to point to the existence of an exemption in order to demonstrate the irrationality of a prohibition to which he is subject, even if the exemption itself does not harm him by conferring an advantage on a rival. That is a common way of making an equal protection challenge. Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987); Orr v. Orr, 440 U.S. 268, 272-73, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979). It does no violence to the concept of standing. It is true that the harm to the plaintiffs that is essential to their right under Article III to maintain this suit comes not from the exemptions but from the threat of prosecution of the plaintiffs, who are not exempt. But because there is a harm to them that emanates from the statute, they have standing to maintain this suit without running afoul of Article III's limitation of the jurisdiction of the federal courts to actual cases. Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1525-26 (7th Cir.1990). The question whether the exemptions are so unreasonable as to deny the plaintiffs equal protection of the laws is a question about the merits of the constitutional challenge rather than about their right to mount such a challenge.
 
 
 5
 The state argues that the district judge should not have reached the merits--that he should have abstained under the doctrine of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), to enable the Wisconsin courts to give the statute an interpretation that might eliminate constitutional doubts. The district judge rejected the argument in part because he could imagine no saving interpretation and in part because--a related point--he felt capable of interpreting the statute himself. Certainly from an intellectual standpoint the judge was capable of interpreting the statute, but an important difference between interpretation of a state statute by a federal court and by a state court is that only the latter interpretation is authoritative. If the district judge had read Wisconsin's new obscenity statute so narrowly as to obviate all constitutional questions, it would still be possible for the state to prosecute people for violating the statute as broadly construed, because the enforcement of the statute would not have been enjoined. And, conversely, in a case such as this in which the district judge, having interpreted the statute, enjoins it in its entirety, he deprives the state courts of an opportunity to save at least a part of the statute by a narrowing interpretation. As a matter of comity, states ought to have that opportunity--even at the price of some delay in the winding up of litigation as the parties adjourn the federal suit to seek the guidance of the state court--unless the statute simply is not susceptible of a narrowing interpretation.
 
 
 6
 Judge Stadtmueller thought this such a case; we need not decide whether he was right. For if a challenged statute is unproblematic from a federal constitutional standpoint no matter how it is (within reason) interpreted, then there is no point in the federal district court's wasting the time of the parties and of the state court system by abstaining. American Booksellers Ass'n, Inc. v. Hudnut, supra, 771 F.2d at 327; Mazanec v. North Judson-San Pierre School Corp., 763 F.2d 845, 848 (7th Cir.1985). This is such a case, and we therefore agree, though for a reason different from that of the district judge, that abstention was not required.
 
 
 7
 The plaintiffs conceded at argument that Wisconsin's obscenity statute raises no problems under the First Amendment. That is not because the statute forbids less obscenity than the state could get away with forbidding without violating the First Amendment as construed in Miller v. California. It is easy to imagine a statute that would not exert the state's full power over obscenity yet would violate the First Amendment. A statute forbidding the sale of obscene books unless the book confined its depictions to procreative sex would be one. The state is permitted to suppress obscenity but it is not permitted to distort the marketplace of erotic discourse by suppressing only that obscenity which conveys a disfavored message. It makes no difference whether this conclusion is premised on the equal protection clause as informed by policies drawn from the free-speech and free-press clauses, Carey v. Brown, 447 U.S. 455, 461-62, 100 S.Ct. 2286, 2290-91, 65 L.Ed.2d 263 (1980), or on the speech and press clauses themselves. Id. at 471-72, 100 S.Ct. at 2295-96 (Stewart, J., concurring); Arkansas Writers' Project, Inc. v. Ragland, supra, 481 U.S. at 229-30, 107 S.Ct. at 1732; Police Dept. v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); American Booksellers Ass'n, Inc. v. Hudnut, supra.
 
 
 8
 However, a statute that exempts a particular material embodiment of obscene expression, such as videotapes, as the plaintiffs continue to insist this statute does, does not present a danger of distorting the market in ideas and expression unless particular messages are correlated with particular material embodiments, which the plaintiffs do not suggest they are. The exemptions in Arkansas Writers' Project, in contrast, included ones based on subject matter--for example, religious magazines were exempted from the challenged tax on publications. A statute that exempts (as Wisconsin's obscenity statute may) realistic simulations of sex, but draws the line at depictions of actual sex, does not distort the market in erotic art and entertainment either--at least no argument has been made that it does. Likewise with the exemption of contract printers, public libraries, and public and private schools and colleges: no one suggests that these entities have been exempted because they purvey a brand of obscenity (anti-Communist obscenity perhaps?) that the authorities are willing to condone because they like the point of view that informs it, or that the exemption will alter the cultural or political content of the pornography sold in Wisconsin. The reason the Wisconsin statute does not go as far as it might to prohibit obscenity is not that the statute makes value judgments among the different viewpoints reflected in obscene materials but that the forces opposed to censorship had the political muscle to force a compromise that arbitrarily, but not invidiously, limited the statute's reach. Not every compromise obscenity statute is certain to pass muster under the First Amendment; a compromise might be motivated by concerns with the social merit of different obscene productions or, regardless of motivation, might fall unequally on different points of view. But this statute does not present these problems.
 
 
 9
 The plaintiffs argue not that the Wisconsin obscenity statute violates the First Amendment but that it is unconstitutionally vague and that the exemptions for schools, libraries, and contract printers are irrational. A criminal statute must, if it is to comport with the requirements of due process, give fair notice of its prohibitions to those persons potentially subject to it. The primary purpose of this doctrine as articulated in the modern cases is the realistic one of limiting prosecutorial discretion rather than the unrealistic one of protecting the reliance of people--for there are precious few--who actually read statutes, criminal or otherwise, before deciding whether to do something. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); Waldron v. McAtee, 723 F.2d 1348, 1354 (7th Cir.1983); United States v. White, 882 F.2d 250, 252 (7th Cir.1989). The two unsettled questions of interpretation pressed by the plaintiffs do not show that the Wisconsin obscenity law fails to provide reasonable notice of its proscriptions. Take first the question (on which the district court's decision pivots) whether the statute forbids realistic simulations of, as well as the actual "showing" of, sexual conduct. The Attorney General of Wisconsin has made the surprising concession that the statute does not forbid even the most realistic simulations. It is surprising because, with the resources of modern photographic and cinematographic technology, simulations of virtually any form of human behavior can be produced that are impossible for the viewer to distinguish from the real thing. A movie industry that can produce a shockingly realistic simulation of decapitation can produce a simulation of sexual intercourse so realistic that the viewer will believe that he is watching a movie of actual intercourse. From the viewer's standpoint, the depiction and the simulation are identical; if one is obscene, so is the other. The qualification, "from the viewer's standpoint," may be significant, though. In the case of actual depiction, the performers are engaged in actual sex acts, presumably for money. They could, therefore, conceivably be regarded as prostitutes, People v. Freeman, 46 Cal.3d 419, 250 Cal.Rptr. 598, 758 P.2d 1128 (1988); State v. Kravitz, 14 Or.App. 243, 511 P.2d 844 (1973), and there is a long-standing if erratically enforced state interest in the suppression of prostitution. But except in the case of children, the draftsmen of obscenity laws do not seem particularly concerned with protecting the morals of actors and actresses.
 
 
 10
 The distinction between simulated and actual sexual activity produces further paradoxes in the case of nonpictorial obscenity. It can hardly matter whether a verbal description of sexual intercourse is a description of actual intercourse between two real people or a description of intercourse between two fictional characters. The only difference will be the names of the persons, and that will be no difference at all from the reader's standpoint if the author does not reveal whether they are real or fictional persons.
 
 
 11
 The Attorney General's concession regarding the scope of Wisconsin's new obscenity statute is so implausible that we hesitate to rely on it to dispel the ambiguity in the words, especially as he makes no representation that his concession would bind either other law enforcement officials in Wisconsin or the courts of Wisconsin. It is true that the statute itself requires the Attorney General's approval before local prosecutors can proceed against violators. Wis.Stat. Sec. 944.21(7). But the Attorney General has not committed himself to deny approval if any is sought for a prosecution of depictions of simulated sex acts; he may change his mind about the meaning of the statute; and he may be replaced in office. And although federal courts frequently defer to state executive interpretations of state statutes, Board of Education v. McCluskey, 458 U.S. 966, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982) (per curiam); Huggins v. Isenbarger, 798 F.2d 203, 207-10 (7th Cir.1986) (per curiam) (concurring opinion), the question here is not whether we should defer to the Attorney General's interpretation but whether the Wisconsin Supreme Court is likely to defer to it; if we are unable to say "yes," we acknowledge the existence of an unanswered interpretive question. Id. at 209.
 
 
 12
 There is still no failure of fair notice. A statute may contain a serious ambiguity; this will not in itself make the statute vague. New statutes, criminal as well as civil, frequently contain ambiguities. If that alone made them unconstitutionally vague, it would be difficult to enact new statutes. The objection to vague statutes is that they invite arbitrary and discriminatory enforcement by those who administer the statute. A statute that contains one or several ambiguities that can be dispelled at a stroke by interpretation is not open to that objection and therefore is not vague in the constitutional sense. Either the Wisconsin statute forbids realistic simulations of sex along with actual depictions (provided of course that the simulation as well as the actual depiction is patently offensive), or it does not; once the Wisconsin courts resolve that issue, the ambiguity will be dispelled, the discretion of the law enforcement authorities of Wisconsin canalized.
 
 
 13
 The Attorney General's interpretation does however produce a vagueness in application that an interpretation of the statute as forbidding simulated as well as actual depictions of sex would not produce. Just as the consumer of pornography may not be able to distinguish an actual depiction of sexual intercourse from a highly realistic one, so a bookseller or a bookseller's clerk may be unable to make the distinction. How then is he to avoid an inadvertent violation of the statute? There are two answers, each sufficient. The first is that statutes that impose strict criminal liability are not considered unconstitutionally vague; the dilemma of the bookseller would be no different from that of a man accused of statutory rape of a girl who appears to be of age. The second is that the bookseller or clerk can be convicted under the Wisconsin statute only if he knows the character of the material that he is selling. Wis.Stat. Sec. 944.21(3). He can always ask his supplier to certify the character of the material, and if the certification is believable and believed, he will have a haven.
 
 
 14
 Analysis of the question whether the statute covers obscene videotapes--the other question that the plaintiffs contend makes the statute unconstitutionally vague--proceeds similarly. If the statute does not include videotapes, it has an enormous loophole difficult to make sense of. A videotape is a form of recording and also a form of film (loosely understood), so there is no semantic barrier to fitting videotapes under the statute, and we can think of no plausible reason why the legislature might want to exempt videotapes. It is true that videotapes are for home viewing, and the statute disclaims regulating private sexual conduct, Wis.Stat. Sec. 944.01, but magazines are for home reading, and the statute covers them; the statute is not limited to the public consumption of obscenity. Political explanations for the exclusion of videotapes are possible, and were hinted at in the district court, but the evidence is weak. We agree with the district judge that, on this score, the statute is not vague or ambiguous; it forbids obscene videotapes. But if this were not clear, it would just be another example of a one-shot ambiguity that will be resolved one way or the other by the Wisconsin courts, and then there will be no room left for law enforcement officials to enforce the statute unequally by interpreting it now one way, now another.
 
 
 15
 We move on to the question whether the statute denies equal protection of the laws by arbitrarily excluding libraries and schools, on the one hand, and contract printers, on the other. We think not. Libraries and schools are not in the business of purveying or exhibiting pornographic materials. They are, however, frequent targets of private citizens concerned, sometimes in an ignorant and narrow-minded way, with the exposure of their children to immoral influences. Mindless censorship, flavored with hysteria, of textbooks and of reading lists, of school libraries and of public libraries, is an old story, Boyer, Purity in Print (1968); Haight, Banned Books (4th ed. 1978), but one with plenty of contemporary vitality. The record in this case contains newspaper articles reporting the efforts of parents to bar The Wizard of Oz and the Garfield comic strip from school libraries. The purpose of the exemption is to shield libraries and schools from groundless complaints of disseminating obscene materials, and is rational. Commonwealth v. Ferro, 372 Mass. 379, 361 N.E.2d 1234 (1977); 4000 Asher, Inc. v. State, 290 Ark. 8, 13-14, 716 S.W.2d 190, 193 (1986); M.S. News Co. v. Casado, 721 F.2d 1281, 1291-92 (10th Cir.1983). In holding a similar exemption unconstitutional, the court in State v. Luck, 353 So.2d 225, 232 (La.1977), overlooked the purpose of the exemption and as a result thought it groundless. The exemption is not irrational once its purpose is grasped.
 
 
 16
 No doubt it rather depreciates Wisconsin's commitment to extirpating obscenity to create an exemption of this sort; for imagine the hue and cry if Wisconsin exempted officials and employees of schools and public libraries from criminal liability for prostitution or rape. But this is a state that got along for eight years with no obscenity statute at all: the American Denmark. There are degrees of perceived criminal gravity, and apparently in Wisconsin obscenity is of not much more than zero degree. But Wisconsin can make its own judgment about the seriousness of obscenity as a social problem responsive to criminal punishment without encountering problems under the equal protection clause, and it ill becomes pornographers to complain about the leniency of an obscenity statute.
 
 
 17
 The exemption of educational and charitable institutions from legal liability is common. Charities were long exempt from tort liability, and they remain largely exempt from property taxes. These are not exemptions from criminal liability, but such exemptions are common too. The Sherman Act, a criminal statute, is riddled with them. E.g., 15 U.S.C. Secs. 17, 640, 1012(b), 1801; 46 U.S.C.App. Sec. 814; Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972). The existence of an exemption will rarely if ever invalidate a statute unless the distinction created by it is invidious--say a head tax from which Christians are exempt.
 
 
 18
 Contract printers may not be as worthy an object of legislative solicitude as educational and eleemosynary institutions, but neither are export associations or agricultural cooperatives or R & D joint ventures or many other beneficiaries of exemptions from criminal statutes. We have just expressed our doubts whether irrational exemptions invalidate a statute unless they create invidious distinctions between the burdened and the exempted, but if these doubts are groundless it makes no difference because the exemption of contract printers is not irrational in any sense of the word. They are low-cost, low-markup operations, in part because their employees do not attempt sophisticated assessments of the prurience or social value of the materials they print. The Wisconsin legislature arrived at a plausible judgment that the burden of criminal liability for the production of obscene materials would fall particularly heavily on contract printers and that the costs of this burden exceeded the benefits in plugging what might otherwise seem a loophole in the statute. This is the kind of judgment (no different in principle from refusing to impose liability on gun manufacturers for the criminal use of their product) that in our system is committed to state and federal legislatures rather than to federal courts, with exceptions inapplicable to this case.
 
 
 19
 Although the exemption for contract printers appears to be unique to Wisconsin, parallel exemptions, for example for nonmanagerial employees, have generally, and as it seems to us correctly, been upheld. People v. Illardo, 48 N.Y.2d 408, 423 N.Y.S.2d 470, 399 N.E.2d 59 (1979). The more puzzling, although commonplace, exemption of movie projectionists (to the exclusion of other employees of movie theaters) has also been upheld. State v. Lesieure, 121 R.I. 859, 873-74, 404 A.2d 457, 464 (1979); State v. Baker, 11 Kan.App.2d 4, 711 P.2d 759 (1985). The correctness of these decisions can be debated, Pack v. City of Cleveland, 1 Ohio St.3d 129, 438 N.E.2d 434 (1982); Wheeler v. State, 281 Md. 593, 380 A.2d 1052 (1977), but it is enough for our purposes that the particular exemptions challenged in this case are rational. We add that, if the plaintiffs are customers of contract printers, they may actually benefit from that exemption, since it makes those printers' costs (which include the expected costs of any criminal liability) lower than they otherwise would be.
 
 
 20
 From language in Carey v. Brown and other decisions in which equal protection analysis is infused with concerns drawn from the First Amendment (most recently, Austin v. Michigan Chamber of Commerce, --- U.S. ----, 110 S.Ct. 1391, 1396, 108 L.Ed.2d 652 (1990)), an argument could be mounted that exemptions from obscenity statutes deserve a more searching review than they have received. But why? What is exempted is obscene, and what is not exempted is also obscene, and we cannot see why the drawing of statutory lines within a category of expression that is deemed not to be protected by the First Amendment should be inhibited by First Amendment worries, unless, to repeat an earlier qualification, the line is drawn on a forbidden basis such as the political content of the exempted materials. Ripplinger v. Collins, 868 F.2d 1043, 1050 (9th Cir.1989).
 
 
 21
 The judgment is reversed with directions to dissolve the injunction and dismiss the suit with prejudice.
 
 
 
 *
 Hon. James T. Moody, of the Northern District of Indiana, sitting by designation