BROWNSBURG AREA PATRONS AFFECTING CHANGE and John Patten, Plaintiffs–Appellants,

v.

Patricia BALDWIN, Prosecuting Attorney for Hendricks County, Jeffrey Modisett, Indiana Attorney General, William Daily, Chairman of the Hendricks County Election Board, Connie Lawson, Secretary of the Hendricks County Election Board, Dolly Starnes, Member of the Hendricks County Election Board, Anthony Long, Chairman of the Indiana Election Commission,[1] Butch Morgan, Member of the Indiana Election Commission, Joseph M. Perkins, JR., Member of the Indiana Election Commission, Dudley Cruea, Member of the Indiana Election Commission,[2] Defendants–Appellees.

No. 96–3981.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1997.

Decided Feb. 24, 1998.

1. Pursuant to Circuit Rule 43, Anthony Long is substituted for Jeffrey Mallamad as a litigant in this case.

2. All of the defendants are being sued in their official capacity.

James Bopp, Jr. (argued), John K. Abegg, Bopp, Coleson & Bostrom, Terre Haute, IN, for Plaintiffs–Appellants.

Phillip D. Hatfield, Jon B. Laramore (argued), Office of the Attorney General, Indianapolis, IN, for Defendants–Appellees Baldwin, Modisett & Long.

Paul A. Hadley, Michael G. Worden, Danville, IN, for Defendants–Appellees Dailey, Lawson & Starnes.

Before COFFEY, EASTERBROOK and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

Brownsburg Area Patrons Affecting Change ("BAPAC") and its founder and leader, John Patten,[3] filed an interlocutory appeal under 28 U.S.C. § 1292(a)(1) after their request to the district court for a preliminary injunction was denied. Because this case presents an important issue regarding the interpretation of a state statute, we certify this case to the Supreme Court of Indiana.

## I. BACKGROUND

BAPAC is a group of citizens located in Hendricks County, Indiana, organized to in-form and educate local citizens on political, social, and economic issues; to act as a conduit for presenting citizens' views to local public officials; and to advise citizens on the positions of local public figures. BAPAC describes itself as non-partisan and voluntary, with no officials or board members. BAPAC accomplishes its mission in part by recording and disseminating information on a telephone hotline regarding candidates' positions on issues. The hotline message sometimes indicates whether a candidate's position is in accordance with the views of BAPAC. BAPAC also prepares and distributes flyers on various candidates and issues.

Prior to the primary election in May 1996, BAPAC aired a message on its hotline that discussed certain candidates' positions on various issues. On June 6, 1996, William Daily, the chairman of the Hendricks County Election Board ("Board"), sent a letter to BAPAC indicating that BAPAC might be considered a "political action committee" ("PAC") as defined by Indiana law.[4] As a PAC, BAPAC would be subject to certain Indiana registration and reporting laws. The letter asked BAPAC for a statement as to why these laws did not apply to BAPAC. On August 6, 1996, BAPAC's lawyer responded with a letter to Daily asserting that BAPAC could not be considered a PAC because its "major purpose [was] not to expressly advocate the election or defeat of any candidate." In late August, Daily wrote a letter to BAPAC stating that the Board had not as of this date reached a final decision regarding BAPAC's status but that the audio tape of the hotline message appeared to be an attempt to influence an election. The letter stated further that if BAPAC had spent over $100 to influence the outcome of a particular race, BAPAC must file the reports

---

**3.** We will refer to the plaintiffs collectively as BAPAC throughout this opinion.

**4.** A "political action committee" is defined in relevant part as:
  (1) An organization located within or outside Indiana that:
    (A) Is not:
      (i) Affiliated with a political party; or
      (ii) A candidate's committee;
    (B) Proposes to influence the election of a candidate for state, legislative, local, or school board office or the outcome of a public question; and
    (C) Accepts contributions or makes expenditures during a calendar year to influence the election of a candidate for state, legislative, local, or school board office or the outcome of a public question that will appear on the ballot in Indiana that in the aggregate exceed one hundred dollars ($100).
Ind.Code § 3–5–2–37(a)(1) (1996).

as required under Indiana law. BAPAC spent $464 in cash or in kind on advocacy activities in 1996.

In September 1996, BAPAC filed a complaint and a motion for a preliminary injunction in federal district court. BAPAC alleges that the definition of "political action committee" under Indiana election law is unconstitutionally overbroad because it impermissibly regulates "issue advocacy," that is, advocacy on politically or socially relevant issues that is not associated with express advocacy in support of certain candidates or electoral outcomes. BAPAC also seeks to challenge the law on the ground that the definition of a PAC includes groups whose "major purpose" is not to engage in express advocacy. BAPAC sought a preliminary injunction to prevent the enforcement of the alleged unconstitutional Indiana election law provisions. On October 11, 1996, the district court held a hearing on the motion for a preliminary injunction. The district court issued its written decision on October 23, 1996, denying the request for a preliminary injunction because it concluded that BAPAC did not possess a likelihood of success on the merits. The district court found that the Indiana statutory language did not regulate issue advocacy based on the Supreme Court's interpretation of similar language in the Federal Election Campaign Act of 1971. *See Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Because BAPAC engaged only in issue advocacy, the district court concluded that it was not a PAC under Indiana law; accordingly, the preliminary injunction was not necessary. Since BAPAC was not a PAC, the district court stated that it did not possess standing to challenge the constitutionality of the statute on the alternate ground that its major purpose was not to engage in express advocacy.[5] BAPAC appeals contending that the district court erred in narrowly construing the relevant portion of the Indiana election law and that the district court erred in concluding that BA-PAC did not have standing to challenge the statute based on its alleged failure to incorporate "major purpose" language.

## II. ANALYSIS

At oral argument, we asked counsel for BAPAC whether this case was suitable for certification to the Supreme Court of Indiana as it appeared to turn so decisively on the Indiana court's interpretation of its own law. Although BAPAC stated that certification was unnecessary, we conclude that it is and certify this case.

### A. District Court's Interpretation of State Law

BAPAC is in the peculiar position of challenging the constitutionality of the Indiana election statute in this court when it essentially prevailed in the district court on statutory interpretation grounds. The district court held that the definition of a PAC does not include organizations engaged only in issue advocacy, and consequently, that BAPAC is not a PAC as defined by Indiana law and so need not comply with the registration and reporting requirements imposed on PACs in Indiana. BAPAC, however, argues now that the district court's interpretation of the statute is incorrect, and thus, asserts that its request for a preliminary injunction should not have been denied. It argues that, in fact, it is a PAC as defined by Indiana statute and accordingly, that the Indiana statute is unconstitutional because it regulates issue advocacy, the only activity in which BAPAC is engaged.

In *Buckley*, the Supreme Court addressed various constitutional challenges to the Federal Election Campaign Act of 1971 ("FECA"). The Court recognized the important First Amendment interest in protecting political speech, including discussions surrounding elections and candidates. *Buckley*, 424 U.S. at 14, 96 S.Ct. at 632 ("The First Amendment affords the broadest protection to such political expression in order to 'as-

---

**5.** In *Buckley*, the Supreme Court also stated that "to fulfill the purposes of [FECA] [the definition of PACs] need only encompass organizations ... the major purpose of which is the nomination or election of a candidate [*i.e.*, express advocacy]." *Buckley*, 424 U.S. at 79, 96 S.Ct. at 663. Be-

cause BAPAC did not engage in express advocacy, the district court held that it did not have standing to challenge whether the Indiana definition of a PAC unconstitutionally included those organizations which engaged in express advocacy but not as their major purpose.

sure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'") (internal citation omitted). Because of the vital importance in protecting such speech, the *Buckley* Court articulated what has come to be known as the "express advocacy" test by stating that the statutory expenditure limit at issue in that case "must be construed to apply to expenditures for communications *that in express terms advocate the election or defeat of a clearly identified candidate for federal office." Buckley*, 424 U.S. at 44, 96 S.Ct. at 646–47 (emphasis added). The Court noted in a footnote that the limitation on expenditures was restricted to "communications containing express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.'" *Id.* at 44 n. 52, 96 S.Ct. at 647 n. 52. Communication that does not constitute express advocacy is generally not susceptible to regulation under the First Amendment. *Id.* at 14–15, 96 S.Ct. at 632–33.

The Indiana statute defines PACs, in part, as groups that spend more than $100 to "influence the election of a candidate ... or the outcome of a public question." Ind.Code § 3–5–2–37(a)(1). The district court construed the phrase "influence the election of a candidate ... or the outcome of a public question" to mean "expressly advocate the election or defeat of a clearly defined candidate." Because BAPAC engages only in issue advocacy rather than express advocacy, the district court concluded that BAPAC would not fall within this definition and thus would not be considered a PAC. Accordingly, the district court stated that BAPAC lacked standing to challenge the constitutionality of the statute based on the "major purpose" test.

The district court based its construction of the Indiana statutory language on the Supreme Court's interpretation of similar language in FECA. FECA required any individual or group (other than a political committee or candidate) who made contributions or ex-

penditures aggregating over $100 in a calendar year to file a statement with the Federal Election Commission. *Buckley*, 424 U.S. at 74–75, 96 S.Ct. at 660–62. The definitions of "contributions" and "expenditures" were based on whether the money was used "for the purpose of ... influencing" the nomination or election of a candidate. The Court concluded that while such language could include "both issue discussion and advocacy of a political result," it would narrowly construe the statute to apply only to expenditures that were used to "expressly advocate the election or defeat of a clearly identified candidate." *Id.* at 80, 96 S.Ct. at 664.

The district court noted the similarities between the language in FECA and the language used in the Indiana election statute when it was passed in 1976.[6] Specifically, the Indiana statute defined "contribution" as:

a gift, subscription, loan, advance, or deposit of money or anything of value made *for the purpose of influencing* the nomination, or election, of any person to office, or *for the purpose of influencing* the outcome of any question, or *for the purpose of influencing* the election of delegates....

Ind.Code § 3–4–1–6(a) (1981) (emphasis added). An "expenditure" was defined as:

a purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made *for the purpose of influencing* the nomination or election, of any person to office, or *for the purpose of influencing* the outcome of any question; or *for the purpose of influencing* the election of delegates....

Ind.Code § 3–4–1–10(a) (1981) (emphasis added). The district court noted that the similarities between the Indiana statute and FECA were "strong and obvious."

In addition to the similarity of the language in both the federal and state statutes, the district court noted that the Indiana statute had been enacted just four weeks after the decision in *Buckley*. Moreover, the district court recognized the statutory interpretation principle that when a legislature

---

**6.** This language was repealed in 1986; however, the district court noted that the Indiana statute continues to use the "influence" language in its

current definition of a political action committee. See *supra* note 4.

adopts language from another jurisdiction, it is presumed that the judicial interpretations of the language by the other jurisdiction are also adopted. *Carolene Prods. Co. v. United States*, 323 U.S. 18, 26, 65 S.Ct. 1, 5–6, 89 L.Ed. 15 (1944); *Pittsburgh, Cincinnati, Chicago & St. Louis R.R. v. Parker*, 191 Ind. 686, 132 N.E. 372, 375 (1921). This presumption, along with the temporal proximity between the passage of the Indiana election law and the *Buckley* decision, led the district court to conclude that the Indiana legislature intended to adopt the reading of the statute as articulated in *Buckley*.

### B. Preliminary Injunction

■ In order to prevail on its motion for a preliminary injunction, BAPAC must show: "(1) some likelihood of prevailing on the merits, and (2) an inadequate remedy at law and irreparable harm if preliminary relief is denied." *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997). If it demonstrates these two elements, then the court considers the irreparable harm to the defendants if preliminary relief is granted as balanced against the irreparable harm to BAPAC if preliminary relief is denied, and the public interests involved. *Id.* (citing *Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 100 F.3d 1287, 1291–92 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997)). We review the district court's legal conclusions *de novo,* while our review of factual findings is for clear error. *Id.*[7]

■ We agree with the district court that BAPAC has demonstrated irreparable harm

and an inadequate remedy at law. BAPAC's position that it has ceased its activities due to fear of prosecution for not satisfying the reporting and disclosure requirements is sufficient to demonstrate irreparable injury.[8] *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Further, BAPAC lacks an adequate remedy at law as any post-election remedy would not compensate it for the loss of the freedom of speech. *See Grossbaum v. Indianapolis–Marion County Bldg. Auth.,* 63 F.3d 581, 585 (7th Cir.1995).

■ Before we may proceed to the balancing of interests, however, we must decide if BAPAC has shown that there is a likelihood of success on the merits. According to BAPAC, success on the merits would be a conclusion that the Indiana election provision at issue is overbroad and is thus unconstitutional. Federal courts must interpret a state statute as that state's courts would construe it. *See Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir.1990) ("The decision of a federal court in a diversity case, or in any other case in which state law supplies the rule of decision, is an exercise in predicting how the highest court of the state would decide the case if it were presented to it."). Accordingly, in order to determine whether BAPAC would have a likelihood of success on the merits, we must attempt to divine how the Supreme Court of Indiana would interpret the definition of a "political action committee" as stated in the Indiana election statute.[9]

---

**7.** We review the district court's balancing of the relevant factors for an abuse of discretion, but the district court did not reach that part of the analysis. *TMT North America,* 124 F.3d at 881.

**8.** The parties state that the defendants named in the present lawsuit are the only ones who could seek to enforce the Indiana election law against BAPAC. We recognize that the district court's determination that BAPAC is not a PAC is binding on the parties and presumably would prevent the enforcement of the statute by these defendants against these plaintiffs. However, because the district court did not enjoin the statute, it is plausible that potential enforcement by some other authority could threaten BAPAC such that

they would refrain from engaging in their activities until this case is fully litigated.

**9.** BAPAC devotes a significant portion of its brief arguing that the district court used the incorrect standard when interpreting the Indiana statute. According to BAPAC, the district court erred by not considering whether the statute was "readily susceptible" to the narrow interpretation. *See Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 397, 108 S.Ct. 636, 645, 98 L.Ed.2d 782 (1988) ("It has long been a tenant of First Amendment law that in determining a facial challenge to a statute, if it be readily susceptible to a narrowing construction that would make it constitutional, then it will be upheld."). Because

No Indiana court has addressed the meaning of the term "for the purpose of influencing" in absolute terms or in relation to the Indiana election statute. Consequently, we look to see how Indiana courts address a statutory interpretation issue of first impression. We first note that Indiana courts will not engage in statutory interpretation unless the language of the statute is ambiguous. *See Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 915 (Ind.1993); *Indiana v. CSX Transp., Inc.*, 673 N.E.2d 517, 519 (Ind.Ct. App.1996). If the statute is not ambiguous, the court will give effect to the plain, ordinary, and usual meaning of the language of the statute. *CSX Transp.*, 673 N.E.2d at 519. Our analysis encompasses not only the technical aids of statutory construction but also "certain jurisprudential considerations, including the separation of powers doctrine." *A Woman's Choice–East Side Women's Clinic v. Newman*, 671 N.E.2d 104, 107 (Ind. 1996) (in interpreting statute after certification from federal district court, stating that "if the present case came to us via our regular appellate jurisdiction, we would construe the [statutory] exception in a constitutional manner insofar as the statutory language would permit") (citing *Brady v. State*, 575 N.E.2d 981, 984 (Ind.1991)). Accordingly, the Indiana courts will interpret the language to maintain its constitutionality if at all possible. *A Woman's Choice*, 671 N.E.2d at 111 (Dickson, J., concurring) (Indiana courts have an "overriding obligation to construe [their] statutes in such a way as to render

them constitutional if reasonably possible"); *see also Burris v. State*, 642 N.E.2d 961, 968 (Ind.1994) (same).

These possibly competing principles of statutory interpretation lead us to conclude that the most prudent course of action is to certify this case to the Supreme Court of Indiana pursuant to this circuit's Rule 52.[10] *See Blue Cross and Blue Shield of Alabama v. Nielson*, 116 F.3d 1406, 1413 (11th Cir. 1997) (stating that the case for certification is even stronger where "the answer ... depends upon reconciliation of the competing trajectories of a number of canons of statutory construction"). Here, a federal court would be required to determine whether the statutory language is ambiguous, but at the same time, construe the statute to be constitutional if possible. In addition, we note that the Supreme Court of Indiana has stated that guidance from other jurisdictions which have interpreted similar statutory language can be helpful in ensuring that Indiana's interpretation of the law "is not engineered in a vacuum." *A Woman's Choice*, 671 N.E.2d at 107; *see also Sightes v. Barker*, 684 N.E.2d 224, 227 (Ind.Ct.App.1997) ("The legislature is presumed to have had in mind the history of the statute and the decisions of the courts upon the subject matter of the legislation being construed."). Clearly then, the Supreme Court's interpretation of similar language in *Buckley* could impact the Supreme Court of Indiana's reading of the defi-

---

we are certifying this case to the Supreme Court of Indiana, we need not decide at this time whether the standard used by the district court in interpreting the state statute was proper.

**10.** Circuit Rule 52 states:

When the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte, or on a motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified. The certification will be made after the briefs are filed in this court. A motion for certification shall be included in the moving party's brief.

The Supreme Court of Indiana permits certification to its court under Indiana Rule of Appellate Procedure 15(O) which states:

When it shall appear to the Supreme Court of the United States, to any circuit court of appeals of the United States, to the court of appeals of the District of Columbia, or to any United States District Court sitting in Indiana that there are involved in any proceeding before it questions or propositions of the laws of [Indiana], which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the Supreme Court of [Indiana], such federal court may certify such questions or propositions of the laws of [Indiana] to the Supreme Court of [Indiana] for instructions concerning such questions or propositions of state law which certificate the Supreme Court of [Indiana], by written opinion, may answer.

nition of "political action committee."[11]

It is true that the district court has not enjoined the statute, and thus the Indiana state courts still have the opportunity to pass judgment on the Indiana election provisions at some point in the future. We also acknowledge that the Supreme Court of Indiana has provided some direction as to how it would approach a statutory interpretation issue such as this one. However, the United States Supreme Court recently reminded us that " '[s]peculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when ... the state courts stand willing to address questions of state law on certification from a federal court.' " *Arizonans for Official English v. Arizona*, —— U.S. ——, ——, 117 S.Ct. 1055, 1074, 137 L.Ed.2d 170 (1997) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 510, 105 S.Ct. 2794, 2805, 86 L.Ed.2d 394 (1985) (O'Connor, J., concurring)). Thus, in the interests of comity, certification is entirely appropriate in this case.

Moreover, an interpretation of the statute by Indiana's highest court will be outcome determinative. *See Shirley v. Russell*, 69 F.3d 839, 844 (7th Cir.1995) ("Certification is appropriate only when the question of state law will control the outcome of the case."). BAPAC acknowledges that the federal courts are unable to provide an authoritative reading of the Indiana election statute. *See* Appellants' Brief at 20 (citing *Gooding v. Wilson*, 405 U.S. 518, 520–21, 92 S.Ct. 1103, 1105–06, 31 L.Ed.2d 408 (1972), and *Kucharek v. Hanaway*, 902 F.2d 513, 517 (7th Cir.1990) ("an important difference between interpretation of a state statute by a federal court and by a state court is that only the latter interpretation is authoritative")). Regardless of how well we might anticipate the Supreme Court of Indiana's interpretation of this statutory provision, authorities in Indiana would not be bound by our determination at this point in the litigation. *See Kucharek*, 902 F.2d at 517 ("If the district judge had read Wisconsin's new ... statute so narrowly as to obviate all constitutional questions, it would still be possible for the state to prosecute people for violating the statute as broadly construed, because the enforcement of the statute would not have been enjoined."). Accordingly, we provide the state court with the opportunity to make a definitive ruling on this issue.

During oral argument, BAPAC argued against certification due to the delay it would create in obtaining a final adjudication on the injunction. We understand that a prompt resolution of the issues is critical in a case such as this where fear of prosecution may be chilling one party's freedom of expression. However, we must also always be careful not to overstep our boundaries in deciding an issue with results that almost exclusively impact Indiana citizens. *Id.* ("As a matter of comity, states ought to have th[e] opportunity [to interpret a state statute constitutionally]—even at the price of some delay in the winding up of litigation as the parties adjourn the federal suit to seek the guidance of the state court—unless the statute simply is not susceptible of a narrowing interpretation."). Such an important determination is better left to the state's highest court. *See Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 418 (7th Cir.1997) ("Although neither party here has requested certification, we are free to certify questions on our own motion.").[12] Consequently, due to the breadth of impact of the issue at bar and the important concerns of federalism apparent when a federal court is asked to interpret a state statute, we respectfully cer-

---

**11.** BAPAC argues that the Indiana legislature could not have relied on *Buckley* because the Indiana statute was introduced prior to the decision in *Buckley*. We note, however, that the Indiana legislature could have modeled its language after that of FECA even though *Buckley* had not yet been decided. BAPAC also asserts that the fact that the Indiana legislature did not change the problematic language after *Buckley* indicates it was not aware of the decision or did not intend to use its language. It is plausible, though, that the Indiana legislature believed that an alteration was unnecessary after the interpretation provided by *Buckley*.

**12.** We therefore decline to consider BAPAC's attack on the constitutionality of the statute based on the "major purpose" test as this case may yet be decided solely on statutory interpretation grounds.

tify the following question to the Supreme Court of Indiana:

Does the Indiana Code's definition of a "political action committee," i.e., any organization which "accepts contributions or makes expenditures ... to influence the election of a candidate ... or the outcome of a public question ... that in aggregate exceed one hundred dollars ($100)," include only those organizations which make contributions or expenditures for communications that in express terms advocate the election or defeat of a clearly identified candidate for office or the victory or defeat of a public question?

The clerk of this court shall transmit the briefs and appendices in this case as well as a copy of this opinion to the Supreme Court of Indiana. Further proceedings in this court are stayed while this matter is considered by the Supreme Court of Indiana.

QUESTION CERTIFIED.