HIGHLAND SALES CORPORATION; ABEL ET AL. *v.* VANCE, ET AL.

[Nos. 30, 158 and 30,159. Filed December 5, 1962. Rehearing denied May 29, 1963.]

*John F. Beckman, Jr., Palmer C. Singleton, Jr., Tinkham, Beckman & Kelly,* of counsel, all of Hammond, *Edgar Bernhard, Richard W. Waller* and *D'Ancona, Pflaum, Wyatt & Riskind,* of counsel, all of Chicago, Illinois, for appellants.

*Robert J. Addison* and *Addison & Greenwald,* of counsel, of Gary, for appellees.

ACHOR, J.—The above cases are considered in a single opinion for the reason that the issues in the two cases are identical, the only difference being that the appellants in the second case are the employees of the appellant in the first case.

Appellant Highland Sales Corp., an Indiana corporation, brought this action for a temporary injunction to restrain and enjoin appellees from detaining, arresting or otherwise interfering with its employees because of their working on Sundays, and, further, to restrain appellees from demanding or requiring that appellant cease doing business on Sundays.

The appellant alleges in substance that it is engaged in the sale of general merchandise, including drug and health items; that it operates a department store known as "Shoppers World" in the town of Highland, Lake County, Indiana; that it has a large invest-

ment in said store and that its gross receipts in 1960 were in excess of $4,000,000.00; that since 1959 the store has operated on Sundays and that 18% of its total annual gross sales are derived from such Sunday business.

Further, appellant alleges that, because of their Sunday employment, the appellees, on July 30, 1961, caused 19 of appellant's employees to be arrested; that, on Sunday, August 6, 1961, they caused six additional employees to be arrested, and on Sunday, August 13, 1961, more than 15 deputy sheriffs, under orders from, and representing appellees, appeared at the store and announced that they would arrest the manager and all sales employees and would continue to make such arrests until said store was closed. That by reason of these arrests and harassments it became necessary for appellant to completely cease doing business on Sundays, thereby suffering great and irreparable loss.

Appellant alleges that all of said arrests, prosecutions and threats of appellees are illegal, for two reasons: First, on the ground that the Acts of 1951, ch. 63, §1 (c), p. 149 [Burns' 1951 Repl. Vol. 11, Pt. 2, Appendix, §8 (A), p. 1522] prohibits any prosecution for the collection of any fine for working on Sunday; and, secondly, because (as stated in appellant's complaint) appellees have "[failed] to arrest employees of other establishments and enterprises, whose employees are likewise working on Sundays, such as places of entertainment, restaurants, gas stations, theaters, bowling alleys, golf courses, stores selling general merchandise such as drugstores and others;" that because appellees permit such other business establishments to operate on Sundays, appellees "are violating the right of equal protection guaranteed [to appellant] by the Fourteenth Amendment of the United States

Constitution, and by Article 1, Section 23 of the Indiana Constitution." :

Appellees' demurrer to appellant's complaint was sustained. Appellants refused to plead further. Thus the sole question presented is the correctness of the order of the trial court which sustained the demurrer to appellant's complaint.

Appellant does not question the constitutionality of the Sunday closing law upon which the action of the appellees was based. This Act, among the other things, provides:

> "Whoever being over fourteen [14] years of age, is found on the first day of the week, commonly called Sunday, rioting, hunting, quarreling, at common labor, or engaged in his usual vocation, works of charity and necessity only excepted, shall be fined not less than one dollar [$1.00] nor more than ten dollars [$10.00;] . . ." §10-4301, Burns' 1956 Repl.

We first consider appellant's contention that the enforcement of the Sunday closing law above cited is suspended by Acts 1951, ch. 63, Sec. 1 (c), which provides:

> "(c) No action shall be brought or prosecuted in the name of the State of Indiana by or on relation of any prosecuting attorney, or by any other person, persons, organization or corporation, for the collection of any fine or penalty or for the imposition of any sentence of imprisonment against any industry or employer, the officers or employees thereof for the violation, occurring on or after December 7, 1941, of any law of this state relating to the number of hours per day or per week, the number of days per week, or the hours within which any female, eighteen years old or over, may be employed in industry, or for work or labor in industry on Sunday; and any and all fines and penalties which may have accrued, or been incurred, or which might be imposed for

any such violation, are hereby remitted, released and forgiven."

In opposition to the above contention, appellees assert that said subsection (c) of the above statute expired March 15, 1961 [as specifically provided in subsection (a)].

Appellant, in support of its contention that Sec. 1 (c) continues in effect as a bar against enforcement of the Sunday closing law, has cited the fact that Sec. 1 consists of three separate subsections designated as "(a)" "(b)" and "(c)." Appellant acknowledges the fact that the effective date of "(a)" expired on March 15, 1961, and that "(b)" expired concurrently with "(a)" because of the fact it covered the same subject matter. However, appellant asserts that the terminate date of "(a)" did not effect a termination of "(c)" for the reason that "(c)" contains additional subject matter not contained in "(a)" and "(b)"; i.e., "work or labor in industry on Sunday," which is asserted to be the subject matter with which we are here concerned.[1] In support of this position, appellant cites and relies upon the rule of statutory construction, as follows:

"It is an elementary rule of statutory construction, that when a definite provision is made with reference to one particular subdivision of a section of the law dealing with the identical subject matter as the other subdivisions thereof and a similar reference is omitted from the other subdivisions thereof as well as from all of the rest of the section, the particular reference is intended to apply solely to the subdivision in

---

[1] Because of the decision reached in this case, based upon another issue, it is not necessary that we consider whether employment as a retail clerk is "work or labor in industry," within the meaning of the Acts 1951, ch. 63, §1(c), p. 149, here under consideration.

which it is contained and to exclude its application from all of the rest." *Cannon* v. *Towner*, 70 N. Y. S. 2d 303, 312, 188 Misc. 955 (Supreme Court, Special Term, 1947).

See also: *Kirkpatrick* v. *Stelling*, 36 Cal. App. 2d 658, 98 P. 2d 566, 574 (1940), appeal dismissed, 311 U. S. 607 (1940), reh. den., 311 U. S. 726 (1940); *State ex rel. White* v. *Grant Superior Court* (1930), 202 Ind. 197, 209-10, 172 N. E. 897, 901.

However, as against the rule of statutory construction, above cited and relied upon by appellant, we are confronted with other equally fundamental and controlling rules of construction, to-wit:

Special statutes, which merely suspend the operation or enforcement of other statutes which are permitted to stand as expressing the general and continuing public policy of the state, subject to such suspension, are to be strictly construed in the light of the special circumstances which prompted such suspension.

"The purpose of all rules or maxims as to the construction or interpretation of statutes is to discover the true intention of the law, and the rules or canons of construction are merely aids for ascertaining legislative intent. The rules of construction are neither ironclad nor inflexible, and must yield to manifestations of a contrary intent. . . .

. . .

"All the rules [of construction] should be considered when it is necessary to construe a statute, and no particular rule should be followed to the exclusion of all others when to do so would lead to illogical conclusions. . . ." 82 C. J. S. *Statutes* §311, pp. 526-527, 528-529 (1953).

"There is no invariable rule for the discovery of the intention of the legislative body, but the question of legislative intent must be decided

from the peculiar facts and circumstances of each enactment. All legitimate and reasonable means will be used to arrive at the legislative intent, and the sources of enlightenment are not limited." 82 C. J. S. *Statutes* §322, p. 571 (1953).

Furthermore, in determining whether the legislature intended that the several subsections of a particular section of an act are to be treated as a whole, with each dependent upon the other, or whether the legislature intended that certain of such subsections might be treated as existing independent of the other provision of the act, the court must consider the manner in which the legislature, itself, treated the law during the course of numerous amendments and re-enactments.

We proceed to give consideration to the legislative intention regarding the continuing effect of Sec. 1, subsection (c) of the Act in the light of the special circumstances which prompted its enactment and the legislative history of the Act. During such amendments or re-enactments of the law, did the legislature treat the Acts of 1951, ch. 63, Sec. 1 as a whole, with each subsection being dependent on the other, or did the legislature treat certain subsections as sufficient unto themselves by permitting them to stand without re-enactment?

As heretofore indicated, the Act of 1951, with which we are now concerned, had its origin in the Acts of 1943. As indicated in Acts of 1943, ch. 90, Sec. 1 (a), the law was originally enacted as an emergency measure for the purpose of making available all possible manpower in aid of the war effort, following Declaration of War on December 8, 1941, because of hostilities on December 7, 1941. This purpose is manifest in the

express provisions of Acts of 1943, ch. 90, Sec. 1 (a) and (b), *supra,* as follows:

> "(a) The laws of this state respecting the number of hours per day or per week, the number of days per week and the hours within which any female, eighteen years old or over, may be employed in industry, or forbidding with respect to employees, male or female, work or labor on Sunday, shall be suspended for the duration of the war or the duration of any contract heretofore or hereafter made by any industry for the production of equipment or production or furnishing of materials or supplies or for services in aid of the war program, whichever may be longer, with respect to any industry which files written notice with the Commissioner of Labor of such industry's employment of, or intent to employ such persons under conditions otherwise prohibited by statute; *provided, however,* that in no event shall this subsection be operative on or after March 15, 1945.
>
> "(b) All laws of this state respecting the number of hours per day, or per week, the number of days per week and the hours within which any female, eighteen years old or over, may be employed in industries, are hereby retroactively *suspended to and including December 7, 1941.*" [Our italics.]

Subsection (c) of the above Act was enacted in its present form. Both (b) and (c) have remained substantially the same through all the several re-enactments of the law. Each makes reference to December 7, 1941, the date of the attack on Pearl Harbor by Japan. Thus the act as a whole is inextricably related to the emergency created by war.

On March 15, 1945 the war was still in progress. Accordingly the act was re-enacted in its entirety by the 1945 legislature. As the only change therein, the legislature substituted March 15, 1947 as a terminal date.

In 1947, confronted by the fact that the active hostilities of World War II had ended, but because of war-time shortages and the fact of an "uneasy peace," of which we take judicial knowledge, the legislature amended subsection (a) of the Act by deleting therefrom that portion which referred primarily to the "duration of the war" and the "war program," as follows:

> "or forbidding with respect to employees, male or female, work or labor on Sunday, shall be suspended for the duration of the war or the duration of any contract heretofore or hereafter made by any industry for the production of equipment or production or furnishing of materials or supplies or for services in aid of the war program, whichever may be longer, with respect to any industry which files written notice with the Commissioner of Labor of such industry's employment of, or intent to employ such persons under conditions otherwise prohibited by statute; . . ."

Furthermore, the date "March 15, 1949," was substituted as the terminal date thereof. Thus subsection (a) was amended to provide:

> "(a) The laws of this state respecting the number of hours per day or per week, the number of days per week and the hours within which any female, eighteen years old or over, may be employed in industry, shall be and the same are hereby suspended until March 15, 1949."

At this time subsections (b) and (c) of the act were again re-enacted in substantially their original form.

In 1949 the entire act was re-enacted in substantially the same form, except that the terminate date was extended to March 15, 1951.

In 1951 the act was again re-enacted in its entirety. Up to this point the law was re-enacted by successive

legislatures as an emergency measure and was extended just beyond the end of the next regular session of the succeeding legislature, which could re-enact the law or permit it to expire according to the need of the time. However, on this occasion the terminal date fixed in subsection (a) thereof was extended to March 15, 1961. The obvious reason for this extended suspension in the enforcement of the enumerated laws for a period of 10 years was the fact that the uneasy peace of the previous four years had deteriorated to a point where the United States was at the time engaged in a "police action" in Korea which, for reasons we need not here discuss, necessitated the continuation of this nation on a wartime economy until the termination of that conflict which seemed destined to continue for an indeterminable period.

Thus it is apparent that the statute in question was enacted and re-enacted as an emergency measure for the purpose of providing the additional manpower necessary to meet the demands of industry occasioned by war. Accordingly, it must be presumed that the legislature did not intend that the law continue in effect beyond the emergency created by those military conflicts except as provided in the terminal date fixed in the act.

Furthermore, it is apparent that the legislature in the successive re-enactments of the law re-enacted the same in its entirety, thus indicating the intention and belief of the legislature that the entire act expired concurrently with the expiration date as fixed in Sec. 1 (a) of the act.

Were we to concede that subsection (c) is subject to the construction urged by appellee, it is also subject to the adverse construction obviously placed upon it by the legislature during the course of its legislative his-

tory. Under the circumstances we adopt the construction which is consistent with the purpose of the act and the manifest legislative intent. Accordingly, we hold that the entire act expired on March 15, 1961.[2]

Next we consider the question as to whether or not appellant was entitled to an injunction because of the fact that the criminal prosecutions and threats thereof constitute an unequal enforcement of the law as guaranteed by the 14th Amendment and by Art. 1, §23 Indiana Constitution. In support of this argument appellant cites the case of *Park Hill, etc., Co.* v. *City of Evansville* (1921), 190 Ind. 432, 443, 130 N. E. 645, 649, in which this court stated:

> "It is also the law that if a municipal ordinance, not invalid upon its face, shall be 'applied and administered by public authority with *an evil eye and an unequal hand,* so as practically to make an unjust and illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is within the prohibition (of amendment XIV) of the Constitution' of the United States. *Yick Wo* v. *Hopkins* (1886), 118 U. S. 356, 373, 374, 6 Sup. Ct. 1064, 30 L. Ed. 200; *Dobbins* v. *Los Angeles* (1904), 195 U. S. 223, 240, 25 Sup. Ct. 18, 49 L. Ed. 169." [Our italics.]

The language above quoted provides neither precedent nor reason which is controlling of this case. First, because the language was merely dicta in the above case, and, secondly, because the factual situation in the *Yick Wo* case, from which the quotation was taken, was distinguishable

---

[2] Acts of 1951, ch. 63, Sec. 1(a), (b) and (c), p. 149 [Burns' 1951 Repl. Vol. 11, Pt. 2, Appendix, §8(A), p. 1522], also omitted from Burns' 1961 Repl. Vol. 11, Pt. 3, p. 678, this statement: "APPENDIX [Laws formerly compiled in the appendix to this volume have either expired or have become obsolete by the passage of time]."

from the case at bar. That case involved the prejudicial action by an administrative officer, whereas, in the case at bar, we are confronted with a situation wherein the law enforcement officials of the state are charged with the duty of enforcing the criminal law which prohibits certain proscribed conduct. Inasmuch as offenders are to be punished for violations of a law which the prosecutor must enforce, the mere fact of the appellees' failure to prosecute others who may be violating the law does not excuse violation by the appellant or bar prosecution against appellant. *Society of Good Neighbors* v. *VanAntwerp*, 324 Mich. 22, 36 N. W. 2d 308.

> "It is a fundamental principle that the failure of executive officers to enforce a specific law against a specific individual or set of individuals can never excuse the disobedience of that law by another." *Strand Amusement Co.* v. *Commonwealth* (1931), 241 Ky. 48, 53, 43 S. W. 2d 321, 323.

Appellant also cites the case of *People* v. *Utica Daw's Drug Co., Inc.* (1962), 16 A. D. 2d 12, 18, 225 N. Y. S. 2d 128, in which it was held that a criminal prosecution which discriminated against the appellant because of "personal animosity or for some other illegitimate reason," was in violation of constitutional provisions which guarantee equal protection of the law.

Without approving the concept of law advanced by appellant, we do note, however, that the complaint in the case at bar alleges no facts from which it can be stated that the law is being enforced against appellant "with an evil eye and an unequal hand," or with "personal animosity or for some other illegitimate reason." In fact the complaint does

not so much as allege that the law was not being enforced against other *like* businesses. The businesses enumerated in the complaint were restaurants, gasoline stations, drugstores which also sell other merchandise, bowling alleys, golf courses and theaters. These businesses are distinguishable from that of appellant's. *People* v. *Friedman* (1950), 302 N. Y. 75, 96 N. E. 2d 184, appeal dismissed, 341 U. S. 907 (1951); *State* v. *Trantham* (1949), 230 N. C. 641, 55 S. E. 2d 198.

Although it may not always have been considered so, employment in restaurants, gasoline stations, drugstores, bowling alleys, golf courses and theaters may be considered as "work of necessity," within the purview of the Sunday law [Acts 1941, ch. 75, Sec. 1, p. 191 (§10-4301, Burns' 1956 Repl.)], *supra.* Courts now recognize that, consistent with the present needs of the people, the law serves to provide a day set apart for rest, recreation, family and community activities and cultural and religious pursuits, which are not equally possible to the greatest number of people, except and unless a special day be set aside for this purpose. *Tinder, Pros. Atty. et al.* v. *Clark Auto Co., Inc.* (1958), 238 Ind. 302, 149 N. E. 2d 808; *Gallagher* v. *Crown Kosher Market* (1961), 366 U. S. 617, 6 L. Ed. 2d 536, 81 S. Ct. 1122.

Furthermore, it appears from appellant's own complaint that they may well be one of the more notorious offenders of the Sunday closing law, within the jurisdiction of the appellee. If this be true, the officials charged with the enforcement of the law may not, with propriety, be charged with enforcing the law "with an evil eye and unequal hand," or "with personal animosity or for some other illegitimate reason," when they first prosecuted the law against such an offender.

It has been stated by respected authority that:

"A prosecuting attorney is ordinarily vested with official discretion as to the institution of criminal prosecutions and as to the cases he will prosecute, . . . Such discretion must, however, be exercised in good faith . . . and in accordance with established principles of law, fairly, wisely, and with skill and reason; . . ." 27 C. J. S. §10, pp. 647, 649.

We do not minimize the duty of the prosecuting attorney to exercise the power of his office fairly and in good faith. However, in order to warrant judicial interference with the office of the prosecuting attorney because of either nonfeasance or malfeasance, it must be made to appear from the facts alleged that such misconduct consists of a gross and intentional failure or refusal to enforce the law in some major area or that such misconduct is actually the product of bad faith or evil design. Such facts are not alleged in appellant's complaint.

We therefore conclude that the prosecution and threatened prosecution against Highland Sales Corp. and its employees did not constitute a violation of appellant's rights for the reasons asserted in appellant's complaint. We further conclude that the trial court committed no error in sustaining the demurrer thereto and in refusing to grant a temporary injunction, as prayed.

Judgment affirmed.

Arterburn & Landis, JJ., concur; Jackson, C. J., concurs in the result; Bobbitt, J., dissents [without opinion].

Note.—Reported in 186 N. E. 2d 682.