**A WOMAN'S CHOICE–EAST SIDE WOMEN'S CLINIC, et al., Respondents (Plaintiffs),**

v.

**Scott C. NEWMAN, Prosecuting Attorney for Marion County, John C. Bailey, M.D., Commissioner of the Indiana Department of Health, et al., Petitioners (Defendants).**

No. 94S00–9511–CQ–1270.

Supreme Court of Indiana.

Aug. 7, 1996.

Rehearing Denied Dec. 30, 1996.

---

Pamela Carter, Attorney General, John Laramore, Arend Abel, Deputy Attorneys General, for petitioners.

Richard Waples, Cheri Harris, Indiana Civil Liberties Union, Indianapolis, Mary J. Hoeller, Dina Cox, Lewis & Wagner, Indianapolis, Simon Heller, Diane Curtis, The Center for Reproductive Law & Policy, New York City, Colleen Connell, American Civil Liberties Union, Chicago, IL, for respondents.

SHEPARD, Chief Justice.

The United States District Court for the Southern District of Indiana has certified [1] to us certain questions about the medical emergency exception [2] to Indiana's new abortion law ("Public Law 187") so that it may resolve a facial challenge to the abortion law's constitutionality. The certified questions are:

(A) Does the definition except a woman from compliance with Ind.Code § 16–34–2–1.1 when such compliance would in any way pose a significant threat to the life or health of the woman?

(B) Does the definition except a woman from compliance with Ind.Code § 16–34–2–1.1 when such compliance threatens to cause severe but temporary physical health problems for the woman?

(C) Does the definition except a woman from compliance with Ind.Code § 16–34–2–1.1 when such compliance threatens to cause severe psychological harm to the woman?

We answer the first and third questions in the affirmative, but the second in the negative.

---

1. Ind.Appellate Rule 15(O).

2. Public Law 187 defines medical emergency as: "Medical emergency," for purposes of IC 16–34, means a condition that, on the basis of the attending physician's good faith clinical judgment, complicates the medical condition of a pregnant woman so that it necessitates the immediate termination of her pregnancy to avert her death or for which a delay would create serious risk of substantial and irreversible impairment of a major bodily function. Ind.Code Ann. § 16–18–2–223.5 (West Supp. 1996); Pub.Law 187–1995, Sec. 2, 1995 Ind.Acts 3327.

The plaintiffs in the District Court are abortion providers. Their argument to us relies largely on rules of statutory construction, urging us to construe the medical emergency exception very narrowly. The Attorney General counters that the General Assembly crafted the exception to conform with the construction given to the medical emergency exception in the Pennsylvania Abortion Control Act.[3] She says that its language supports an interpretation consistent with federal court decisions on abortion.

The rules or maxims of construction are flexible aids to the search for meaning. *Highland Sales Corp. v. Vance,* 244 Ind. 20, 26, 186 N.E.2d 682, 685 (1962). They also cover certain broader jurisprudential considerations, including the separation of powers doctrine. Accordingly, if the present questions came to us via our regular appellate jurisdiction, we would construe the exception in a constitutional manner insofar as the statutory language would permit. *Brady v. State,* 575 N.E.2d 981, 984 (Ind.1991).

To define the scope of the medical emergency exception as a matter of state law, we write on a slate not merely clean, but spotless. In such cases, this Court frequently looks to other jurisdictions for guidance in the resolution of similar issues so that our interpretation of the law is not engineered in a vacuum. *See, e.g., Witherspoon v. Salm,* 251 Ind. 575, 579, 243 N.E.2d 876, 878 (1969). The field of abortion law is so centered on federal court decisions, however, that not a single state supreme court has defined its state's medical emergency exception. Public Law 187 was enacted in the light of well-publicized, highly-scrutinized federal court decisions, particularly the U.S. Supreme Court's decision in *Planned Parenthood of Southeastern Pennsylvania v. Casey.*[4]

The posture of this case is thus unusual, even among certified questions. The litigation spawning the questions is a facial challenge on federal constitutional grounds to a state statute. The certified questions thus present something of a conundrum, posed as they are on the District Court's interpretation of the constitutional issues in front of it. Our task is to define the meaning of the medical emergency exception as a matter of state law, knowing that the District Court, bound to our interpretation of state law under *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), will need to use that answer in the context of its own constitutional assessment. We proceed to note here the legal context in which the statute was written and the District Court's questions certified.

In *Casey,* a majority of the Supreme Court reaffirmed the essential holding of *Roe v. Wade:*[5] that a woman has a right to terminate her pregnancy without undue interference from the State before the fetus reaches viability, that the State may restrict abortions after the fetus reaches viability so long as the State provides an exception for women whose pregnancies endanger the woman's life or health, and that State has legitimate interests in protecting both the health of the woman and the life of the fetus from the outset of the pregnancy. 505 U.S. at 846, 112 S.Ct. at 2804.

The first substantive issue resolved in *Casey* is similar to the issue before us. Like the plaintiffs here, the petitioners argued that the statute defined "medical emergency" too narrowly and foreclosed the possibility of a woman obtaining an immediate abortion despite some significant health risks. 505 U.S. at 880, 112 S.Ct. at 2822. Framing the issue, a majority of the Court noted that "[i]f that contention were correct, we would be required to invalidate the restrictive operation of the provision, for the essential holding of *Roe* forbids a State from interfering with a

---

**3.** 18 Pa.Cons.Stat. Ann. §§ 3203–3220 (1980 & Supp.1996). The Abortion Control Act defines "medical emergency" as:

[t]hat condition which, on the basis of the attending physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious

risk of substantial and irreversible impairment of a major bodily function.
18 Pa.Cons.Stat. Ann. § 3203 (1996).

**4.** 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

**5.** 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health." *Id.* (citing *Roe*, 410 U.S. at 164, 93 S.Ct. at 732). The Court's statement of the issue foreshadowed its holding: the restrictive language of the Abortion Control Act's medical emergency exception does not foreclose the possibility of immediate abortion when a woman faces significant health risks due to continuation of her pregnancy.

In its consideration of whether Pennsylvania's statute complied with this constitutional imperative, the Court declared that although "the definition could be interpreted in an unconstitutional manner, ... 'it would adhere to the interpretation given the language by the Court of Appeals.'"[6] *Id.* It quoted the Third Circuit's understanding of the statutory language "'to assure that compliance with (Pennsylvania's) abortion regulations would not in any way pose a significant threat to the life or health of a woman.'" *Id.* (quoting *Casey*, 947 F.2d at 701). The Supreme Court reached this conclusion from the following passage in the Third Circuit's opinion:

> The word "risk" necessarily implies an event that may or may not happen in the future. Neither "risk" nor the addition of the adjective "serious" implies that the probability assessed is the probability of the hypothesized event occurring immediately following the time of assessment. Accordingly, we do not believe the risk that prematurely ruptured membrane, if untreated, will lead to substantial and irreversible injury only after progressing through shock or infection necessarily means that there is no "serious risk" at the onset of the condition. We assume that the risk of substantial and irreparable impairment of a major bodily function will be quantitatively less at the onset of a prematurely ruptured membrane than after shock has occurred, but this does not mean the risk at onset is not "serious."
>
> The Pennsylvania legislature did not choose the wording of its medical emergency exception in a vacuum, and we do not believe the words chosen should be interpreted in one. In the case of all three conditions pointed to by the clinics, the treatment uniformly prescribed by the medical profession at the time of the legislature's choice was an immediate abortion. This was the recommended treatment in all pregnancies in which these conditions arose, including planned and desired pregnancies. This medical consensus that the risk occasioned is sufficiently serious to call for an immediate abortion was a part of the context in which the medical emergency provision was fashioned.

> \*    \*    \*    \*    \*    \*

> While the wording seems to us carefully chosen to prevent negligible risks to life or health or significant risks of only transient health problems from serving as an excuse for noncompliance, we decline to construe "serious" as intended to deny a woman the uniformly recommended treatment for a condition that can lead to death or permanent injury.

*Casey*, 947 F.2d at 701.

### (A) Threats to Health

■ The first certified question asks whether Public Law 187 excuses compliance with Ind.Code § 16–34–2–1.1 when such compliance would in any way pose a significant threat to the life or health of the woman.

Plaintiffs put forth three arguments for the position that Public Law 187's medical emergency exception does not support an affirmative answer to the first question. First, they claim that the plain language does not support the construction. Second, they contend that even if the language is capable of such a construction, such is not what the legislature intended. Finally, they argue that Public Law 187 is not identical to the Pennsylvania Abortion Control Act and it should not be given the same "flawed construction accorded similar statutes by federal courts." Resolution of the first two arguments renders discussion of the third unnecessary.

■ We conclude that Public Law 187's language contemplates that all relevant fac-

tors pertaining to a woman's health can, indeed must, be considered when deciding whether to dispense with the statute's informed consent provisions. Plaintiffs rely on the absence of the word "health" in the statute and they note the statute does not contain an immunity provision for the medical professional who dispenses with the informed consent requirements.

■ We conclude instead that a doctor's regard for all relevant factors pertaining to a woman's health is implicit in the term "clinical judgment." The inclusion of the term "clinical judgment" allows the attending physician the flexibility to exercise to the fullest extent her professional judgment when diagnosing a patient.[7] If this diagnosis indicates that an abortion is medically necessary, then the physician may perform it without delay. The references to death or substantial impairment[8] simply focus the physician's clinical judgment on medical necessity rather than lesser and regular conditions normally associated with pregnancy. Furthermore, a physician who acts with care and good faith has no rational fear of criminal prosecution when deciding to dispense with the statute's informed consent provisions; thus, a positive provision for immunity is not necessary to shield a physician from prosecution on the basis of professional judgment.

■ Plaintiffs seem to suggest that the word "delay" in the impairment clause ("or for which delay would create serious risk") is limited to the statutory eighteen-hour waiting period. Such a limited interpretation of "delay" would not cover certain medical conditions[9] about which plaintiffs' expert testified in District Court. We think the statute affords women protection from risk connected with delays more generally, not just an eighteen hour delay. Medical conditions indicating the necessity of therapeutic abortion are serious enough threats to a woman's health to permit a physician to dispense with the informed consent provisions. The simple reality is that the informed consent requirements are virtually meaningless when an abortion is the medically indicated treatment, and there is no evidence that the legislature intended to impose an undue burden on women so afflicted.

Plaintiffs argue alternatively that Indiana's legislature removed the term "health" from the definition of medical emergency because it intended a tough and restrictive exception.

7. We understand the term "clinical judgment" to be a shorthand for a physician's judgment of his patient's condition made in the light of his professional training and experience and based on both his physical observation of the patient and the patient's own description of her symptoms. *See, e.g., Steadman's Medical Dictionary* 317 (25th ed.1990) (clinical. 1. Relating to the bedside of a patient or to the course of his disease. 2. Denoting the symptoms and course of a disease, as distinguished from the laboratory findings of anatomical changes.); *The Sloane–Dorland Annotated Medical–Legal Dictionary* 270 (1987) (evidence, clinical: Clinical verification and clinical evidence are not limited objective evidence. Clinical evidence means the recognition, assessment, and evaluation by a physician of a subjective complaint, such as pain, or of objective evidence, such as physical manifestations. In other words clinical evidence is evidence applying to either objective or subjective symptoms.); *Seats v. Lowry*, 930 S.W.2d 558, 562 (Tenn.App.1996) ("In many instances there can be no fixed rule by which to determine the duty of a physician, and he must often use his own best judgment and act accordingly. By reason of that fact, the law will not hold a physician guilty of negligence, even though his judgment may later prove erroneous in a given case, unless it be shown that the course pursued was clearly against the course recognized as correct by the profession generally and the specialty practiced by the defendant physician as it existed in ... similar communities."); *Kurzner v. Sanders*, 627 N.E.2d 564, 568–69, 89 Ohio App.3d 674, 680–81 (1993) ("clinical judgment" is physician's unassailable subjective determination, but professional conduct in making judgment is subject to objective standard of care).

8. "Medical emergency ... necessitates the immediate termination of her pregnancy to avert her death or for which a delay would create serious risk of substantial and irreversible impairment of a major bodily function." Ind.Code Ann. § 16–18–2–223.5 (West Supp.1996).

9. The Plaintiffs' expert, renowned abortion rights activist Dr. Jane Hodgson, testified about pregnancy complications resulting in conditions of diabetes, hypertension, emboli and eclampsia, epilepsy, and asthma. Emboli, eclampsia, and pre-eclampsia are particularly deadly, but each of these conditions may qualify a woman for an immediate abortion if, in her physician's clinical judgment, the condition posed a serious risk to the patient's life or health unless treated by abortion more promptly than the eighteen-hour period.

They maintain that for the Court to give it a broader interpretation would amount to a judicial rewrite of the statute "by removing a burden that the legislature explicitly declared should be imposed." (Brief at 18.) This explicit declaration does not appear in Public Law 187, but rather in two remarks made on the floor of the House of Representatives by the bill's sponsor, Representative Michael Young. Representative Young remarks spoke of restricting the exception to circumstances when a woman was in grave danger and of distancing Public Law 187 from *Doe v. Bolton*,[10] the companion case to *Roe v. Wade.* He also spoke of preventing the exception from swallowing the rule by "open(ing) it up to every abortion you can think of whether it's an emergency or not." (Plaintiffs' Exh. 38, r. at 1.)

■ In interpreting statutes, we do not impute the opinions of one legislator, even a bill's sponsor, to the entire legislature unless those views find statutory expression. *O'Laughlin v. Barton,* 582 N.E.2d 817, 821 (Ind.1992). Moreover, the Attorney General points to a fair amount of evidence in plaintiffs' submissions that the legislature actually and deliberately copied Pennsylvania's law. Pl. Exh. 31, pp. 100212, 100220. There is evidence in the District Court record that the bill's sponsor knew of and relied on the Abortion Control Act's construction when drafting and promoting the bill.[11] Pl. Exh. 31, pp. 1000056, 100146, 100220.

■ This question asks whether a woman may be excepted from compliance with the statutory informed consent provisions when she faces significant and imminent threats to her life or health. Our answer is affirmative. Such a tight causal link clearly comes within the statute's plain language. Where a woman faces imminent, serious harm absent prompt action, the attending physician may perform the medically-indicated abortion.

We think the statute permits immediate abortion far short of medical calamities. An attending physician may dispense with the statutory informed consent requirements when she concludes in her best clinical judgment that her patient's condition indicates an abortion is medically necessary.

The General Assembly intended the medical emergency exception to apply to all significant factors relevant to a woman's health. As we noted above, our response about the meaning of this statute is necessarily rendered without a tight examination of the contours of federal court decisions concerning abortion. This is the task of the District Court. If this Court was called upon to assess the constitutionality of this statute, we might well modify our view of the statute's demands if doing so would preserve its constitutionality. *Burris v. State,* 642 N.E.2d 961, 968 (Ind.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 319, 133 L.Ed.2d 221 (1995) (statute will not be held unconstitutional if reasonable construction renders it constitutional).

10. 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). In *Bolton,* the Supreme Court resolved a vagueness challenge to the term "health" by holding that "health" included both physical and mental health. *Bolton,* 410 U.S. 179, 192, 93 S.Ct. 739, 747. The Court stated:
"'Indeed, whether a particular operation is necessary for a patient's physical or mental health is a judgment that physicians are obviously called upon to make routinely whenever surgery is considered.' [*U.S. v. Vuitch,* 402 U.S. 62, 72, 91 S.Ct. 1294, 1299, 28 L.Ed.2d 601 (1971).] This conclusion is equally applicable here. Whether, in the words of the Georgia statute, 'an abortion is necessary' is a professional judgment that the Georgia physician will be called upon to make routinely. We agree ... that the medical judgment may be exercised in the light of all factors—physical, emotional, psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment. And it is room that operates for the benefit, not the disadvantage, of the pregnant woman." 410 U.S. at 192, 93 S.Ct. at 747.

11. *Moses v. Cober,* 641 N.E.2d 668, 670–71 (Ind. App.1994) (when legislature acts, it is presumed to know history of an act and court decisions interpreting it); *In re Marriage of Hudson,* 434 N.E.2d 107, 113 (Ind.App.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 ("It is presumed that when language or statutes are adopted from a sister state, the constructions placed upon such language or statutes are adopted as well."); *Pittsburgh, Cincinnati, Chicago & St. Louis R.R. v. Parker,* 191 Ind. 686, 695, 132 N.E. 372, 375 (1921).

### (B) Temporary Harms

■ Does Public Law 187's medical emergency exception excuse compliance with Indiana Code § 16–34–2–1.1 when such compliance threatens to cause severe but temporary physical health problems for the woman? Both parties suggest that the answer to this question is negative, so lengthy discussion is not warranted.

We agree with the parties that the statute allows only death or substantial and irreversible impairment to excuse compliance with its informed consent provisions. Temporary problems pass and are not ordinarily of such severity that they necessitate treatment by abortion. As such, severe-but-temporary conditions in which an abortion is not the medically necessary treatment are not covered by the exception.

### (C) Psychological Harms

■ The answer to the third question, whether compliance with Public Law 187's informed consent provisions may be excused when compliance threatens to cause the woman severe psychological harm, is affirmative. Such circumstances are covered by the exception, assuming they are not temporary, as our answer to the previous question indicates.

Plaintiffs draw a distinction between mental process and bodily function which they maintain is irreconcilable. Mental processes are done by the brain, of course, and the brain is an organ, so mental processes are bodily functions even though they are not mechanical or chemical. Persons who suffer mental health injuries are often substantially and irreversibly disabled. A woman faced with this risk may be excused from compliance with the informed consent requirements when her physician concludes through good faith clinical judgment that an abortion is medically indicated.

It is also possible that a woman may suffer long term emotional or psychological injury from making an ill-informed decision to abort a pregnancy. The legislature has attempted to ensure that women receive the best information available when making this decision and to provide an exception when the information is not helpful because an abortion is medically necessary. Public Law 187's medical emergency exception excuses a woman from the informed consent requirement when there is a significant threat to her life or health, physical and mental.

### Conclusion

In summary, we conclude that the medical emergency provision of Public Law 187 permits dispensing with the informed consent requirements when the attending physician, in the exercise of her clinical judgment in light of all factors relevant to a woman's life or health, concludes in good-faith that medical complications in her patient's pregnancy indicate the necessity of treatment by therapeutic abortion. We add that the physician may do so with respect to serious and permanent mental health issues. A physician may not, however, dispense with the informed consent provisions as to health problems which are temporary.

DeBRULER, J., concurs.

DICKSON, J., concurs in result with separate opinion.

SULLIVAN, J., concurs and dissents with separate opinion.

SELBY, J., concurs and dissents with separate opinion.

DICKSON, Justice, concurring in result.

I concur with the majority that the answers to certified questions 1, 2, and 3 are yes, no, and yes, respectively, but my conclusion rests upon different grounds. I accept the majority's statutory construction of the definition of "medical emergency" in Public Law 187–1995, because I believe it is necessitated by federal constitutional considerations. *See Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Were it not for our overriding obligation to construe our statutes in such a way as to render them constitutional if reasonably possible, I would agree with Justice Sullivan's literal interpretation of the "medical emergency" definition enacted by our legislature.

SULLIVAN, Justice, concurring and dissenting.

Today's opinion holds that so long as the attending physician, in the exercise of his or

her "clinical judgment," finds that an abortion is indicated by any non-temporary health condition more severe than the "lesser and regular conditions normally associated with pregnancy," the physician may dispense with the informed consent provisions of the Indiana abortion control act and "perform the abortion without delay." *A Woman's Choice v. Newman,* op. at 109 (Ind.1996). And this applies to all bodily functions—mechanical, chemical, emotional or psychological. *Id.* at 111. As such, the majority answers the federal district court's first and third questions in the affirmative.

My reading of the statute and the legislative history leads me to a more restrictive interpretation of the statute. The plain language of the "medical emergency" definition allows for abortions only when a pregnant woman's medical condition is so complicated that either (i) "immediate termination of her pregnancy" is necessitated to "avert her death" or (ii) delay in termination of her pregnancy "would create serious risk of substantial and irreversible impairment of a major bodily function." Ind.Code § 16–18–2–223.5 (1995 Supp.). It is true that the determination is to be made according to "the attending physician's good faith clinical judgment." *Id.* But the grammatical construction of this provision simply will not lend itself to including within the definition of "medical emergency" such serious threats to the health of a pregnant woman as (i) substantial but reversible impairments of major bodily functions and (ii) irreversible impairments of minor bodily functions. For this reason, I would answer the first question in the negative.

I think the legislative history shows that the legislature intended this very restrictive abortion control system. I agree that "we do not impute the opinions of one legislator, even the bill's sponsor, to the entire legislature unless those views find statutory expression," Op. at 110, quoting *O'Laughlin v. Barton,* 582 N.E.2d 817, 821 (Ind.1992). But here Representative Young's views did find statutory expression: his remarks quoted in the majority opinion today were made during consideration of an amendment proposed by him, an amendment which was adopted and became law. The bill had been amended in committee in a way that, according to Representative Young, "open[ed] it up to every abortion you can think of whether it's an emergency or not." Representative Young told the House that the committee language was the "[c]omplete opposite" of what the supporters of the bill favored because "instead of talking about preventing [a woman's] death, this language will talk about her physical health instead of her imminent death because of not having an abortion." Representative Young asked his colleagues to adopt his amendment to restore the bill to its original purpose, creating an exception from the informed consent requirements only "if the woman's life is in danger."[1] The House adopted the Young amendment and it became law, thereby giving Representative Young's views "Statutory expression."

I agree that the district court's second question should be answered in the negative.

As to the third question, I agree that, under Indiana law, emotional or psychological harms are impairments of bodily functions. *Wayne Twp. Bd. of Sch. Comm. v. Indiana Ins. Co.,* 650 N.E.2d 1205, 1211 (Ind.

---

1. In seeking approval for his amendment, Representative Young told the House:

My [amendment] deletes some language that was added in the committee.... The reason we need to change this back quite frankly is this opens it up to every abortion you can think of whether it's an emergency or not. Complete opposite of the supporters of this bill is what they do not want here. Quite frankly, an opinion we have from the language instead of talking about preventing her death, this language will talk about her physical health instead of her imminent death because of not having an abortion.

Also, by having the word "health" at the end of those two sentences instead of the words that I propose, impairment of major bodily function,

those words could mean anything that affects a woman's well being from including physical, sociological or family problems. So, if she has a disagreement with her husband it now becomes an emergency and they can perform an abortion without an informed consent or the items that go along with it, that's the danger of those words. If you believe in this bill, we need to take those words out and go back to the purpose of this bill, especially for a medical emergency, if the woman's life is in danger which we all can agree with. I would ask your support of this amendment.
Plaintiff's Exhibit 38, Apr. 10, 1995: House Floor Debate on S.B. 311 on Second Reading (First Time), pp. 1-2.

Ct.App.1995), *transfer denied* (holding emotional damage to be "bodily injury" under liability insurance policy). However, under the abortion control act, a woman threatened with severe psychological harm which is either temporary or otherwise reversible is still required to comply with the informed consent requirements. For this reason, I would also answer the third question in the negative.

SELBY, Justice, concurring and dissenting.

I concur in result with Justice Sullivan. I would observe, however, that we are constrained by the particular manner in which the case is presented, including the framing of the certified questions.[1] As the majority opinion mentions, and as Chief Justice Shepard observes in another opinion handed down today, "[T]hough our consideration of certified questions promotes the accurate application of state law in federal courts, we also acknowledge the shortcomings of such proceedings." *Citizens Nat'l Bank of Evansville v. Foster,* 668 N.E.2d 1236 (Ind.1996).

---

1. The questions include an inquiry about temporary problems of physical health but no parallel inquiry for the certified question concerning psychological harm.