The Honorable Richard Alldritt State Representative, 105th District State Capitol, Room 302-S Topeka, Kansas 66612
Dear Representative Alldritt:
You request our opinion regarding K.S.A. 1999 Supp. 65-6703. Specifically, your questions are "whether a specific mental health exception is constitutionally required and is a mental health exception contained within the statute."
Your first question may be answered by reference to the United States Supreme Court's decision in United States v. Vuitch.[1] The District of Columbia abortion statute that was the subject of that case prohibited performance of any abortion except "as necessary for the preservation of the mother's life or health . . . ."[2] Milan Vuitch, a doctor who had been indicted for producing and attempting to produce abortions in violation of this provision, challenged the statute as vague because the term "health" as used in the statute was "ambivalent and uncertain."[4]
While the trial court had "apparently felt that the term was vague because there `is no indication whether it includes varying degrees of mental as well as physical health,' 305 F. Supp., at 1034," the Supreme Court upheld the statute finding that "properly construed the District of Columbia abortion law is not unconstitutionally vague."[5] The Court found that the statute had been previously interpreted by another federal district court judge "to permit abortions `for mental health reasons whether or not the patient had a previous history of mental defects.' [313 F. Supp.], at 1174-1175."[6] The Court then stated:
 "We see no reason why this interpretation of the statute should not be followed. Certainly this construction accords with the general usage and modern understanding of the word `health,' which includes psychological as well as physical well-being. Indeed Webster's Dictionary, in accord with that common usage, properly defines health as the '(s)tate of being . . . sound in body (or) mind.' Viewed in this light, the term `health' presents no problem of vagueness. Indeed, whether a particular operation is necessary for a patient's physical or mental health is a judgment that physicians are obviously called upon to make routinely whenever surgery is considered."[7]
Thus, the United States Supreme Court has upheld abortion statutes that do not contain a specific mental health exception, at least when the statute in question can be construed to include such an exception.
You next inquire whether, while not specifically stated, K.S.A. 1999 Supp. 65-6703 nevertheless contains a mental health exception.
K.S.A. 1999 Supp. 65-6703 states as follows:
 "(a) No person shall perform or induce an abortion when the fetus is viable unless such person is a physician and has a documented referral from another physician not legally or financially affiliated with the physician performing or inducing the abortion and both physicians determine that: (1) The abortion is necessary to preserve the life of the pregnant woman; or (2) a continuation of the pregnancy will cause a substantial and irreversible impairment of a major bodily function of the pregnant woman."[8]
At least one court has interpreted language identical to that which is emphasized in the above-quoted statute to include mental functions:
 "The answer to the third question, whether compliance with Public Law 187's informed consent provisions may be excused when compliance threatens to cause the woman severe psychological harm, is affirmative. Such circumstances are covered by the exception, assuming they are not temporary, as our answer to the previous question indicates.
 "Plaintiffs draw a distinction between mental process and bodily function which they maintain is irreconcilable. Mental processes are done by the brain, of course, and the brain is an organ, so mental processes are bodily functions even though they are not mechanical or chemical. Persons who suffer mental health injuries are often substantially and irreversibly disabled. A woman faced with this risk may be excused from compliance with the informed consent requirements when her physician concludes through good faith clinical judgment that an abortion is medically indicated.
 "It is also possible that a woman may suffer long term emotional or psychological injury from making an ill-informed decision to abort a pregnancy. The legislature has attempted to ensure that women receive the best information available when making this decision and to provide an exception when the information is not helpful because an abortion is medically necessary. Public Law 187's medical emergency exception excuses a woman from the informed consent requirement when there is a significant threat to her life or health, physical and mental."[9]
In Planned Parenthood of Southern Pennsylvania v. Casey,[10] the United States Supreme Court reviewed Pennsylvania's medical emergency statute, which also contains language identical to that we have highlighted in the above reference to K.S.A. 1999 Supp. 65-6703:
"Under the statute, a medical emergency is
 "'[t]hat condition which, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function.' 18 Pa.Cons.Stat. § 3203 (1990).
 "Petitioners argue that the definition is too narrow, contending that it forecloses the possibility of an immediate abortion despite some significant health risks. If the contention were correct, we would be required to invalidate the restrictive operation of the provision, for the essential holding of Roe
forbids a State to interfere with a woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health. [Citations omitted.]"[11]
Because the Court of Appeals had interpreted the Pennsylvania statute "to assure that compliance with its abortion regulations would not in any way pose a significant threat to the life or health of a woman," the Supreme Court deferred to that interpretation and concluded that "as construed by the Court of Appeals, the medical emergency definition imposes no undue burden on a woman's abortion right."[12] In correlating the phrase "serious risk of substantial and irreversible impairment of a major bodily function" to the term "health," the Court drew in more than what some may consider "bodily function" to mean. In several other instances involving abortion statutes, the Supreme Court has concurred with lower court rulings that have defined "health" to include mental as well as physical maladies. The Court's decision inU.S. v. Vuitch,[13] discussed previously, was one such instance. Doev. Bolton,[14] decided the same day as Roe v. Wade,[15] was another:
 "We agree with the District Court, 319 F. Supp., at 1058, that the medical judgment may be exercised in the light of all factors-physical, emotional, psychological, familial, and the woman's age-relevant to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment. And it is room that operates for the benefit, not the disadvantage, of the pregnant woman."[16]
Lower federal courts have held statutes unconstitutional that cannot be read to contain a mental health exception. The United States Court of Appeals for the sixth circuit has stated:
 "We believe the Court will hold, despite its decision in Casey, that a woman has the right to obtain a post-viability abortion if carrying a fetus to term would cause severe non-temporary mental and emotional harm. Doe and Vuitch -which both involved regulations essentially prohibiting, as opposed to delaying, abortions-strongly suggest that a State must provide a maternal health exception to an abortion ban that encompasses situations where a woman would suffer severe mental or emotional harm if she were unable to obtain an abortion. Moreover, Roe and Doe were decided on the same day and `are to be read together.' Roe 410 U.S. at 165, 93 S.Ct. at 733. Therefore, Roe's prohibition on state regulation when an abortion is necessary for the `preservation of the life or health of the mother,' id., must be read in the context of the concept of health discussed in Doe, see id. at 191-92, 93 S.Ct. at 747-48. Accordingly, the Act's medical necessity exception is unconstitutional, because it does not allow post-viability abortions where necessary to prevent a serious non-temporary threat to a pregnant woman's mental health."[17]
Because the United States Supreme Court has placed a paramount emphasis on maternal health throughout all stages of pregnancy holding that states must carve out an exception for the life and health of the pregnant woman even in post-viability abortion prohibition statutes, and because it has defined health to include mental aspects, we believe the courts would likewise construe K.S.A. 1999 Supp. 65-6703(a)(2) to include a mental health exception. This interpretation is consistent with what has been publically stated by the legislation's principal authors, and the Governor, to have been their intent when passing K.S.A. 1999 Supp.65-6703.[18] We recognize that K.S.A. 1999 Supp. 65-6721 was passed at the same time using the phrase "substantial and irreversible impairment of a major physical or mental function" in its maternal health exception provision.[19] However, there is no evidence that the Legislature intended "bodily function" to be something different than "physical or mental function"; they may just be two ways of saying the very same thing. In light of all the above case law and apparent legislative intent, we do not believe the difference between the two provisions would compel a different conclusion.
In summary, the United States Supreme Court has found that a state statute prohibiting post-viability abortion does not have to specifically contain the words "mental health" in its maternal health exception to be considered constitutional; statutes not containing these words have been construed to nonetheless include mental health within the scope of "health" generally. In our opinion, the term "bodily function," as used in K.S.A. 1999 Supp. 65-6703, would be interpreted by the courts to include an exception for risks to maternal mental health, as well as physical health, as long as such risk is substantial and irreversible.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm
[1] 402 U.S. 62, 28 L.Ed.2d 601, 91 S.Ct. 1294 (1971).
[2] Vuitch, 91 S.Ct. at 1297. [This case was decided two years prior to Roe v. Wade,[3]
[3] 410 U.S. 113, 35 L.Ed.2d 147, 93 S.Ct. 705 (1973).
[4] Id., at 1298.
[5] Id., at 1299.
[6] Id.
[7] Id.
[8] Emphasis added.
[9] A Woman's Choice-East Side Women's Clinic v. Newman, 671 N.E.2d 104,111 (Ind. 1996).
[10] 505 U.S. 833, 120 L.Ed.2d 674, 112 S.Ct. 2791(1992).
[11] 505 U.S. at 879-880, 112 S.Ct. at 2822.
[12] Id.
[13] Supra, note 1.
[14] 410 U.S. 179, 35 L.Ed.2d 201, 93 S.Ct. 739 (1973).
[15] Supra, note 2.
[16] Doe v. Bolton, 410 U.S. at 192, 93 S.Ct. at 747. See also Harrisv. McRae, 448 U.S. 297, 316, 65 L.Ed.2d 784, 100 S.Ct. 2671, 2687
(1980).
[17] Women's Medical Professional Corp. v. Voinovich, 130 F.3d 187, 209
(6th Cir. 1997), cert. den. 523 U.S. 1036, 140 L.Ed.2d 496, 118 S.Ct. 1347
(1998). See also Planned Parenthood of Central New Jersey v. Verniero,41 F. Supp.2d 478 (D.N.J. 1998).
[18] Letter from Representative Tim Carmody to the Kansas City Star, April 22, 1998; letter from Senator Tim Emert to Governor Bill Graves, April 24, 1998; Governor's Message to the House, April 27, 1998.
[19] L. 1998, Ch. 142, §§ 15, 18.